VALERIE ENOCH, Plaintiff v. EDWARD R. INMAN and ALAMANCE COUNTY
DEPARTMENT OF SOCIAL SERVICES, Defendants

No. COA02-1410

(Filed 1 June 2004)

**Public Officers and Employees— race discrimination claim—
§ 1983—Title VII**

The trial court erred by granting defendants' motion to dismiss plaintiff county DSS employee's race discrimination claims even though the complaint appears to attempt to assert a claim directly under the federal constitution instead of referencing 42 U.S.C. § 1983, because: (1) the mere fact that a complaint neglects to specify that it is based on § 1983 does not require dismissal even though referencing the statute is the more preferable course; (2) the allegations in the complaint were sufficient to support a § 1983 claim for violation of plaintiff's equal protection rights against both defendant DSS director individually and defendant DSS employer; and (3) a state or local government employee may pursue claims of race discrimination under Title VII, § 1983, or both.

Appeal by plaintiff from order entered 4 September 2002 by Judge J.B. Allen, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 12 June 2003.

*McSurely & Osment, by Alan McSurely and Ashley Osment, for plaintiff-appellant.*

*Office of the County Attorney of Alamance County, by David I. Smith, and Adams Kleemeier Hagan Hannah & Fouts, by Brian S. Clarke, for defendants-appellees.*

GEER, Judge.

Plaintiff Valerie Enoch appeals the trial court's order granting defendants' motion to dismiss plaintiff's race discrimination claims. Although, unfortunately, the complaint fails to specifically reference any statute as the legal basis for the claim, we hold that its allegations are sufficient to state a claim under 42 U.S.C. § 1983. Although defendants contend that a public sector employee may only challenge race discrimination by filing a claim under Title VII, 42 U.S.C. § 2000e *et seq.*, a review of United States Supreme Court decisions and the legislative history of Title VII establishes that state or local govern-

mental employees may pursue claims of race discrimination under Title VII, § 1983, or both.

Facts

At the time of the events alleged in the complaint, plaintiff was an African-American employee of the Alamance County Department of Social Services ("DSS"). On 30 December 1998, defendants advertised for a vacant program manager position with DSS. The advertisement stated that only applicants meeting the minimum qualifications should apply. The minimum qualifications included at least 24 months of supervisory experience in social work programs.

When Ms. Enoch applied for the program manager position, she had 67 months of supervisory experience in social work programs. Three other people, all white, also applied for the position. Each had less supervisory experience in social work programs than Ms. Enoch: Linda Allison had 18 months, Alexa Jordan had 10 months, and Phillip Laughlin had 8 months.

In February 1999, defendant Edward R. Inman, who was the Director of DSS, interviewed the four applicants. After the initial interview, Mr. Inman eliminated Laughlin from consideration and granted second interviews to the three remaining applicants. Ms. Enoch learned in June 1999 that Mr. Inman had selected Ms. Allison for the position despite the fact that she did not possess the minimum qualifications for the position.

Ms. Enoch and her husband met with Mr. Inman to discuss Mr. Inman's reasons for selecting Ms. Allison rather than Ms. Enoch. During the course of the conversation, Mr. Inman reportedly stated, "You people always want to believe there is race involved. There was no race involved in this decision." Ms. Enoch's husband replied, "A lot of Black people consider the term 'you people' in itself to be racist. . . . I would appreciate it if you would not use the term with us." After the meeting ended and as Ms. Enoch and her husband were walking out the door, they both heard Mr. Inman repeat, "You people always choose to believe there's race involved."

On 27 March 2002, Ms. Enoch filed suit alleging that she had been subjected to racial discrimination in violation of her right to equal protection under the Fourteenth Amendment of the United States Constitution. Defendants moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) on the grounds that the complaint failed

to state a claim for relief, that plaintiff failed to exhaust her administrative remedies, and that plaintiff's claims were barred by the statute of limitations. The trial judge granted defendants' motion on 4 September 2002. Plaintiff filed a timely appeal from that order.

## Discussion

Ms. Enoch contends that her complaint asserts a claim for relief under both 42 U.S.C. §§ 1981 and 1983.[1] When a party files a motion to dismiss pursuant to Rule 12(b)(6), the question for the court is whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001). The court must construe the complaint liberally and "should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). We review the trial court's dismissal *de novo*.

Defendants correctly point out that even though state and local governmental employees may sue for federal constitutional violations only by bringing suit under 42 U.S.C. § 1983, the complaint appears to attempt to assert a claim directly under the federal constitution. *See Cale v. City of Covington*, 586 F.2d 311, 313 (4th Cir. 1978) (plaintiff may not sue directly under the federal constitution for violations by state or local government officials, but rather must proceed under § 1983). Nevertheless, "[t]he legal theory set forth in the complaint does not determine the validity of the claim." *Braun v. Glade Valley Sch., Inc.*, 77 N.C. App. 83, 86, 334 S.E.2d 404, 406 (1985). An incorrect choice of legal theory "should not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory." *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E.2d 611, 625 (1979). We must, therefore, determine whether the allegations of plaintiff's complaint are sufficient, as plaintiff argues, to support claims under 42 U.S.C. § 1981 and § 1983 even though plaintiff's complaint labels her claims solely as violations of the United States Constitution.

---

1. The parties have not addressed any immunity defenses, whether defendant DSS is a state or local governmental entity, or whether DSS is a "person" under § 1983. Nothing in this opinion should be construed as expressing an opinion as to any of those issues.

*I. Whether Plaintiff's Complaint is Sufficient to State a Claim for Relief under § 1983.*

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983 (2000). In order to state a claim under § 1983, a plaintiff must allege: (1) that the defendant "deprived him of a right secured by the 'Constitution and laws' of the United States[;]" and (2) that defendant acted "under color of law." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 26 L. Ed. 2d 142, 150, 90 S. Ct. 1598, 1604 (1970).

Defendants argue that plaintiff's failure to specifically reference § 1983 renders the complaint deficient. This Court rejected this contention in *Jones v. City of Greensboro*, 51 N.C. App. 571, 592-93, 277 S.E.2d 562, 576 (1981), *overruled on other grounds by Fowler v. Valencourt*, 334 N.C. 345, 435 S.E.2d 530 (1993), holding that a trial court erred in granting a motion to dismiss even though the plaintiff's complaint contained no specific reference to 42 U.S.C. § 1983 because the factual allegations of the complaint, when liberally construed, supported a claim for relief under § 1983.

Numerous other jurisdictions have held likewise that the mere fact that a complaint neglects to specify that it is based on § 1983 does not require dismissal. *See, e.g., Am. United for Separation of Church & State v. School Dist. of the City of Grand Rapids*, 835 F.2d 627, 632 (6th Cir. 1987) (dismissal improper although complaint did not specifically recite § 1983 because plaintiff was only required to allege that it was deprived of a federal right by a person acting under color of state law); *Harper v. Summit County*, 2001 UT 10 ¶ 34 n.14, 26 P.3d 193, 200 n.14 (2001) ("A party must allege a constitutional violation but need not refer specifically to section 1983 to successfully plead a violation of it."); *Heinly v. Commonwealth of Pennsylvania*, 153 Pa. Commw. 599, 605 n.5, 621 A.2d 1212, 1215 n.5 (1993) ("[T]he mere failure to specifically plead Section 1983 will not doom the complaint."); *Rzeznik v. Chief of Police of Southampton*, 374 Mass. 475, 484 n.8, 373 N.E.2d 1128, 1135 n.8 (1978) ("Due to the fact that the plaintiff alleged all the necessary elements of a § 1983 claim in his complaint, his failure specifically to include the statute in the pleadings is not fatal to his case.").

Thus, the fact that the complaint does not reference § 1983, standing alone, does not justify dismissal of plaintiff's complaint. We stress, however, that specification of the statute upon which a plaintiff relies is by far the preferable course.

We next turn to the sufficiency of the allegations in the complaint. Plaintiff's complaint alleges each of the elements required by *Adickes*. First, she alleges that defendant Inman subjected her to race discrimination in failing to promote her in violation of her right to equal protection under the Fourteenth Amendment to the United States Constitution. Second, plaintiff alleges that Inman, as the DSS Director, was acting under color of law when discriminating against plaintiff. These allegations, including the factual details summarized above, are sufficient to support a § 1983 claim against an individual government employee.

In addition, however, plaintiff's complaint must include sufficient allegations to establish grounds to hold DSS liable. In *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), the Supreme Court held for the first time that a local governmental body could be sued under § 1983, but that liability could not be based upon a theory of *respondeat superior*. Under *Monell*, a municipality may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* at 694, 56 L. Ed. 2d at 638, 98 S. Ct. at 2037-38.

Plaintiff in this case has alleged that DSS "has engaged in a longstanding pattern and practice against African American professionals, and has never placed an African American in a management position." Under notice pleading, there is no requirement that plaintiff's allegation be more specific. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 524, 113 S. Ct. 1160, 1163 (1993) (plaintiff is only required to include "a short and plain statement," under Fed. R. Civ. P. 8(a)(2), of the basis of municipal liability). *See also Jordan by Jordan v. Jackson*, 15 F.3d 333, 340 (4th Cir. 1994) (complaint sufficient under *Monell* where it described county policies that resulted in plaintiff's injury). We hold, therefore, that plaintiff has sufficiently alleged a claim under § 1983 for violation of her equal protection rights against both defendants.

Defendants, however, urge that a state or local governmental employee subjected to race discrimination may only sue under Title

VII. More specifically, defendants argue first that, under *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1989), a state or local governmental employee may not sue for race discrimination under § 1981, but rather is limited to § 1983. Defendants then contend that any § 1983 claims are in turn pre-empted by Title VII.

If we were to adopt defendants' reasoning, we would be holding that private employees may sue for race discrimination under both Title VII and § 1981, but that state or local governmental employees are limited only to Title VII. Private employees could take advantage of the multi-year statute of limitations of § 1981, would be subjected to no cap on compensatory or punitive damages, and could sue employers with fewer than 15 employees. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60, 44 L. Ed. 2d 295, 301, 95 S. Ct. 1716, 1720 (1975) (private sector employee may seek relief under both § 1981 and Title VII). On the other hand, under defendants' approach, state or local governmental employees could only sue for race discrimination if they complied with the stringent time limitations of Title VII, they could not sue any employers with fewer than 15 employees, and any compensatory or punitive damages would be subject to the caps set forth in 42 U.S.C. § 1981a (2000).[2]

We are unwilling to so dramatically limit a state or local governmental employee's rights in comparison with the rights of a private employee confronted with the same unlawful, discriminatory conduct without a clear expression of such an intent by Congress. Not only have defendants failed to point to any evidence of this intent, we do not believe that their reasoning is consistent with United States Supreme Court authority or the legislative history of Title VII.

Defendants argue that we are bound by a footnote in the Fourth Circuit decision of *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir.), *cert. denied*, 516 U.S. 870, 133 L. Ed. 2d 126, 116 S. Ct. 190 (1995) ("[Plaintiff] cannot bring an action under § 1983 for violation of her Fourteenth Amendment rights because [she] originally could have instituted a Title VII cause of action."). The North Carolina Supreme Court has, however, twice held that North Carolina appellate courts are not bound, as to matters of federal law, by decisions of federal courts other than the United States Supreme Court. In *Security Mills*

---

2. Section 1981a(b)(3) limits compensatory and punitive damages awarded under Title VII to a total of $50,000 for employers with fewer than 101 employees, to $100,000 for an employer with fewer than 201 employees, to $200,000 for an employer with fewer than 501 employees, and $300,000 for employers with more than 500 employees.

*of Asheville, Inc. v. Wachovia Bank & Trust Co.*, 281 N.C. 525, 529, 189 S.E.2d 266, 269 (1972), the Supreme Court held:

> Our attention has been directed to no decision of the Supreme Court of the United States which determines either of these questions [of federal law]. Decisions of the lower federal courts, construing this Act of Congress, are not binding upon us, notwithstanding our respect for the tribunals which rendered them . . . . We must, therefore, construe this Act of Congress ourselves . . . .

Similarly, the Supreme Court in *State v. McDowell*, 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984), wrote:

> State courts are no less obligated to protect and no less capable of protecting a defendant's federal constitutional rights than are federal courts. In performing this obligation a state court should exercise and apply its own independent judgment, treating, of course, decisions of the United States Supreme Court as binding and according to decisions of lower federal courts such persuasiveness as these decisions might reasonably command.

*See also State v. Adams*, 132 N.C. App. 819, 820, 513 S.E.2d 588, 589 (in construing the Double Jeopardy clause, holding, "with the exception of decisions of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State"), *disc. review denied*, 350 N.C. 836, 538 S.E.2d 570, *cert. denied*, 528 U.S. 1022, 145 L. Ed. 2d 414, 120 S. Ct. 534 (1999).

In any event, *Hughes* does not appear to be the law in the Fourth Circuit. Prior to *Hughes*, the Fourth Circuit rendered two decisions both expressly holding that Title VII does not preclude a public sector employee from bringing a § 1983 action based on violations of the Equal Protection Clause. *Beardsley v. Webb*, 30 F.3d 524, 527 (4th Cir. 1994) ("Title VII does not supplant § 1983"); *Keller v. Prince George's County*, 827 F.2d 952, 963 (4th Cir. 1987) ("[W]e think it difficult to imagine that the Supreme Court would uphold a ruling that Title VII in fact preempts the remedy available for a violation of the fourteenth amendment for intentional employment discrimination provided by § 1983."). The Fourth Circuit recently recognized that *Hughes* could not overrule these two decisions:

> Shortly after our decision in *Beardsley* was issued, however, a separate panel of our court, in a footnote, declined to consider a public sector employee's sex discrimination claim under § 1983.

*See Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995). . . . This footnote, in turn, has led several district courts to erroneously conclude that [they] must follow *Hughes*, instead of *Keller*, either because *Hughes* is a more recent decision by this court or because the plaintiff in *Hughes*, unlike the plaintiff in *Keller*, did not bring a Title VII claim along with a Section 1983 claim. . . .

It is quite settled that a panel of this circuit cannot overrule a prior panel. Only the *en banc* court can do that. . . . And, we are unpersuaded that the viability of a § 1983 claim hinges upon whether a plaintiff pleads a Title VII claim alongside it. . . . Because this panel is bound to follow the decisions in *Keller* and *Beardsley*, we reverse and remand [plaintiff's] § 1983 claim to the district court for further proceedings.

*Booth v. Maryland*, 327 F.3d 377, 382-83 (4th Cir. 2003).

With the exception of the footnote in *Hughes*, all the federal Courts of Appeals that have addressed this issue have held, consistent with *Keller*, *Beardsley*, and *Booth*, that a public employee is not limited to Title VII, but may also sue for discrimination in violation of the fourteenth amendment under § 1983. *See Thigpen v. Bibb County*, 223 F.3d 1231, 1239 (11th Cir. 2000) ("We therefore . . . hold that a section 1983 claim predicated on the violation of a right guaranteed by the Constitution—here, the right to equal protection of the laws—can be pleaded exclusive of a Title VII claim."); *Annis v. County of Westchester*, 36 F.3d 251, 255 (2d Cir. 1994) ("We therefore hold that an employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone, and is not required to plead concurrently a violation of Title VII."); *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997) ("On the other hand, it is well established that Title VII does not preempt § 1983 for public employers."); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 549-50 (5th Cir. 1997) (a public employee may assert claims for racial discrimination under both Title VII and § 1983); *Notari v. Denver Water Dep't*, 971 F.2d 585, 588 (10th Cir. 1992) (plaintiff is not precluded by Title VII from bringing a claim under § 1983 for race discrimination in violation of the fourteenth amendment); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990) ("We have previously held that the comprehensive scheme provided in Title VII does not preempt section 1983, and that discrimination claims may be brought under either statute, or both."); *Roberts v. College of the Desert*, 870

F.2d 1411, 1415 (9th Cir. 1988) ("We agree with the reasoning of those courts that have held that Title VII does not preempt an action under section 1983 for a violation of the fourteenth amendment."); *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985) ("A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII."); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) ("Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII."). After reviewing these decisions, we find no reason to diverge from the overwhelming weight of authority, especially in light of Title VII's legislative history and the United States Supreme Court's relevant decisions.

Originally, as passed in 1964, Title VII did not provide a remedy for discrimination by public employers. Congress amended Title VII in 1972 to provide remedies for federal, state, and local employees. The question at issue here is whether Congress intended, through the 1972 amendments, to make Title VII the exclusive remedy for state and local governmental employees.

As *Keller* notes, 827 F.2d at 958,[3] the House Committee on Education and Labor first proposed amendments to Title VII to eliminate the exemption for state and local employers. *See* H.R. 1746, Subcomm. on Labor, U.S. Senate, 92d Cong., 2d Sess., *Legislative History of the Equal Employment Opportunity Act of 1972, (H.R. 1746, P. L. 92-261) Amending Title VII of the Civil Rights Act of 1964* 1-60 (Comm. Print 1972) (hereafter "*Legislative History*"). The House Committee Report expressly explained that these amendments were not intended to eliminate the right to sue under § 1983:

> In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected. . . . The bill, therefore, by extending jurisdiction

---

3. *Keller* provides a comprehensive analysis of Title VII's legislative history. In this opinion, we simply note the most pertinent points.

to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation. . . . Inclusion of state and local employees among those enjoying the protection of Title VII provides an alternate administrative remedy to the existing prohibition against discrimination "under color of state law" as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983.

*Legislative History*, at 78-79. When, however, the bill reached the House floor, it was amended to make Title VII "the exclusive remedy of any person claiming to be aggrieved by an unlawful employment practice." *Id.* at 144. Over objections that the amendment would effectively erase the Civil Rights Acts, the House approved the amendment to the bill. *Id.* at 242, 276, 285, 314, 323.

When the bill moved to the Senate, the Senate Committee on Labor and Public Welfare responded to testimony criticizing the exclusivity provision and substituted a bill that omitted that provision. *Id.* at 344-409. The Senate Committee Report explained its intent: "[N]either the above provisions regarding the individual's right to sue under title VII, nor any of the other provisions of this bill, are meant to affect existing rights granted under other laws." *Id.* at 433. When the committee bill was reported to the floor of the Senate, amendments were proposed restoring the exclusivity provision in order to bar remedies such as § 1983. *Id.* at 1095 (amendment no. 846); *id.* at 1382 (amendment no. 877). During the debates on the bill and the amendments, the sponsor of the Senate bill, Senator Williams, explained:

[The Civil Rights Act of 1866] was followed up, in 1871, by another provision. These are basic laws from which, as the Attorney General stated, developed a body of law that should be preserved and not wiped out, and that all available resources should be used in the effort to correct discrimination in employment.

*Id.* at 1517.[4] *See also id.* at 1404 ("[T]o make Title VII the exclusive remedy for employment discrimination would be inconsistent with our entire legislative history of the Civil Rights Act. It would jeopardize the degree and scope of remedies available to the workers of our country."), 1400, 1403, 1405, 1512. The Senate ultimately rejected the amendments and passed the bill without any exclusivity provision. *Id.* at 1407, 1521, 1790. When the House and Senate bills were sent to

4. The Civil Rights Act of 1866 ultimately became § 1981, while the Civil Rights Act of 1871 enacted the provision that became § 1983.

ENOCH v. INMAN

[164 N.C. App. 415 (2004)]

conference, the House agreed to the omission of the exclusivity provision. *Id.* at 1815, 1837, 1875.

Like the Fourth Circuit in *Keller*, we believe that this legislative history—in which Congress expressly declined to adopt an exclusivity provision so as to preserve rights under §§ 1981 and 1983— "clearly indicates" that the 1972 amendments were not intended to preempt the preexisting remedy under § 1983 for violations of the Fourteenth Amendment. *Keller*, 827 F.2d at 958. In the face of this legislative history, we cannot simply assume otherwise. *Cf. Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 416-17 n.20, 20 L. Ed. 2d 1189, 1194-95 n.20, 88 S. Ct. 2186, 2191 n.20 (1968) ("The Civil Rights Act of 1968 does not mention 42 USC § 1982, and we cannot assume that Congress intended to effect any change, either substantive or procedural, in the prior statute."). As the court in *Keller* explained:

> To conclude that Title VII preempts an action under § 1983 for a violation of the fourteenth amendment, we would be required to substitute our own notions of federal policy for those of Congress. The final result would vitiate the intent of § 2 of the 1972 Act to adopt an aggressive pro-civil rights measure. We decline to adopt as law the view of a minority of Congress when the majority will is so well documented.

*Keller*, 827 F.2d at 962.

Moreover, this view is consistent with the analysis of the United States Supreme Court. In 1974, only two years after the amendments to Title VII, the Court pointed to Congress' rejection in 1964 and 1972 of amendments that would have made Title VII the exclusive remedy for employment discrimination and stated "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48, 39 L. Ed. 2d 147, 158, 94 S. Ct. 1011, 1019-20 (1974).

A year later, the Court noted "the independence of the avenues of relief respectively available under Title VII and the older § 1981." *Johnson*, 421 U.S. at 460, 44 L. Ed. 2d at 301, 95 S. Ct. at 1720. In holding that a private employee may choose to sue under § 1981 rather than Title VII, the Court rejected arguments that allowing claims under other statutes would undermine Title VII:

> But these are the natural effects of the choice Congress has made available to the claimant by its conferring upon him independent

administrative and judicial remedies. The choice is a valuable one. Under some circumstances, the administrative route may be highly preferred over the litigatory; under others, the reverse may be true. We are disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted, as, for example, a proscription of a § 1981 action while an EEOC claim is pending.

*Id.* at 461, 44 L. Ed. 2d at 302, 95 S. Ct. at 1720-21.

In 1976, the Supreme Court held, after again reviewing the 1972 amendments, that federal employees asserting employment discrimination claims are limited to Title VII. *Brown v. General Serv. Admin.*, 425 U.S. 820, 48 L. Ed. 2d 402, 96 S. Ct. 1961 (1976). In doing so, however, the Court stressed that the legislative history of Title VII explicitly manifested an intent to preserve *existing* discrimination remedies. *Id.* at 833-34, 48 L. Ed. 2d at 412, 96 S. Ct. at 1968. The Court reasoned that since Congress was unaware of any pre-existing remedies for federal employees, it could not have intended to preserve such remedies. *Id.* at 828, 48 L. Ed. 2d at 409, 96 S. Ct. at 1966 ("The legislative history thus leaves little doubt that Congress was persuaded that federal employees who were treated discriminatorily had no effective judicial remedy."). The legislative history, or lack thereof, was dispositive. *See also Jett*, 491 U.S. at 734, 105 L. Ed. 2d at 626, 109 S. Ct. at 2722 (noting that *Brown* relied upon Congress' perception that federal employees lacked any remedy as indicating an intent to create an exclusive, preemptive administrative and judicial scheme for redress of federal employment discrimination).

In 1979, the Supreme Court again emphasized in *Great Am. Fed. Sav. & Loan Assoc. v. Novotny*, 442 U.S. 366, 60 L. Ed. 2d 957, 99 S. Ct. 2345 (1979), that the Civil Rights Acts that gave rise to §§ 1981 and 1983 survived the passage of Title VII. Although the Court held that 42 U.S.C. § 1985(3) could not be invoked to redress violations of Title VII,[5] the Court noted:

[T]he Civil Rights Acts of 1866 and 1871 were explicitly discussed during the course of the legislative debates on both the Civil Rights Act of 1968 and the 1972 Amendments to the 1964 Act, *and the view was consistently expressed that the earlier statutes*

---

5. In other words, an employee could not base a § 1985(3) claim on the statutory rights of Title VII.

ENOCH v. INMAN

[164 N.C. App. 415 (2004)]

*would not be implicitly repealed. . . .* Specific references were made to §§ 1981 and 1983, but, significantly, no notice appears to have been taken of § 1985."

*Id.* at 377 n.21, 60 L. Ed. 2d at 967 n.21, 99 S. Ct. at 2351 n.21 (emphasis added).

Finally, defendants' contention that § 1983 claims are barred by Title VII cannot be reconciled with the Supreme Court's holding in *Jett*, addressing the question whether state or local governmental employees may sue directly under § 1981. The Court held: "[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett*, 491 U.S. at 735, 105 L. Ed. 2d at 627, 109 S. Ct. at 2723. *Jett* did not strip public sector employees of their substantive rights under § 1981, but held that "Congress thought that the declaration of rights in § 1981 would be enforced against state actors through the remedial provisions of § 1983." *Id.* at 734, 105 L. Ed. 2d at 626, 109 S. Ct. at 2722.

The Supreme Court would not have held that § 1981 rights could be enforced under § 1983 if it nonetheless believed that no remedy was available to local and state governmental employees under § 1983 for employment discrimination. Although the Supreme Court had implied a private right of action under § 1981 for private employees because there was no other procedural mechanism to enforce their rights under § 1981, the *Jett* Court found, with respect to local and state employees, "[t]hat is manifestly not the case," because of the existence of § 1983. *Id.* at 732, 105 L. Ed. 2d at 624, 109 S. Ct. at 2721. If § 1983 is not available as a remedy, then the entire underpinning for the Supreme Court's decision evaporates. *Jett* presumes the existence of a remedy for race discrimination under § 1983.

Courts have also considered the effect of the 1991 Civil Rights Act. In 1991, Congress passed a new Civil Rights Act, amending § 1981 to overrule *Patterson v. McLean Credit Union*, 491 U.S. 164, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989) (limiting the scope of § 1981) and amending Title VII to allow jury trials and compensatory and punitive damages (subject to caps). As the Fourth Circuit recognized in *Beardsley*, however, there is no indication that this Act manifested a change by Congress from its previous desire that Title VII supplement

rather than supplant other existing laws governing race discrimination. *Beardsley*, 30 F.3d at 527. We agree that "it is quite unlikely that Congress implicitly intended the 1991 Act to bar claimants from seeking relief under § 1983. It is more reasonable to presume that Congress intended both avenues of relief to remain open." *Id.* at 527. It is a well-established principle of statutory construction that Congress is presumed to be aware of a judicial construction of a statute and to have adopted that construction when it re-enacts that statute without expressing any intention to reject the judicial interpretation. *Lorillard v. Pons*, 434 U.S. 575, 580, 55 L. Ed. 2d 40, 46, 98 S. Ct. 866, 870 (1978). Since Congress, when amending Title VII in 1991, never expressed any intention to preclude § 1983 claims, there is no basis for concluding that Congress' intention has changed since 1972. *See also Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1231 (11th Cir. 1998) ("[N]othing in the Civil Rights Act of 1991 indicates congressional intent to overrule this appellate case law [retaining § 1983 as a parallel remedy for public sector employment discrimination].").

We, therefore, hold that public sector employees may sue for discrimination in violation of the Fourteenth Amendment under § 1983. Title VII does not provide an exclusive remedy for unlawful employment discrimination.

II. *Whether Plaintiff's Complaint States a Claim for Relief under § 1981.*

Plaintiff also contends that her complaint is sufficient to state a claim for relief under § 1981, which provides:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (2000). The 1991 Civil Rights Act amended § 1981 to confirm that the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (2000).

ENOCH v. INMAN

[164 N.C. App. 415 (2004)]

Even though, as discussed above, "an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory[,]" the complaint must still "give sufficient notice of the wrong complained of[.]" *Stanback*, 297 N.C. at 202, 254 S.E.2d at 625. In plaintiff's complaint, "the wrong complained of" is repeatedly asserted to be a violation of plaintiff's federal constitutional rights. There is no indication in the complaint that plaintiff is attempting to enforce her substantive rights under § 1981. Even with notice pleading, we do not believe that the complaint gives sufficient notice that it is asserting a claim for violation of plaintiff's rights under § 1981 as opposed to the federal constitution.

Defendants contend that any such claim is, in any event, barred by *Jett*. We note that in the 1991 Civil Rights Act, Congress added a subsection (c) to § 1981 that provides: "The rights protected by this section are protected against impairment by nongovernmental discrimination *and impairment under color of State law.*" 42 U.S.C. § 1981(c) (2000) (emphasis added). The courts that have addressed this issue have split on the question whether § 1981(c) overrules *Jett*. *Compare Oden v. Oktibbeha County*, 246 F.3d 458, 463 (5th Cir.) (holding that the legislative history of the 1991 Civil Rights Act does not indicate an intent to overrule *Jett*), *cert. denied*, 534 U.S. 948, 151 L. Ed. 2d 258, 122 S. Ct. 341 (2001); *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) ("The sparse legislative history of the Civil Rights Act of 1991 does not reveal a contrary intent" to *Jett*) *with Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996) ("[W]e conclude that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning *Jett*'s holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981."). Because of our holding, we need not address this question.

In summary, we hold that plaintiff's complaint states a claim for relief under § 1983, that Title VII does not preclude claims under § 1983 for violation of the Fourteenth Amendment, and that the trial court, therefore, erred in granting the motion to dismiss.

Reversed.

Judges McGEE and BRYANT concur.