IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-9

No. 339A18-2

Filed 11 February 2022

THE NEW HANOVER COUNTY BOARD OF EDUCATION

v.

JOSHUA H. STEIN, in his official capacity as Attorney General of the State of
North Carolina, and NORTH CAROLINA COASTAL FEDERATION, INC., and
SOUND RIVERS, INC.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of
the Court of Appeals, 275 N.C. App. 132 (2020), reversing and remanding an order
entered on 12 October 2017 by Judge Paul C. Ridgeway in Superior Court, Wake
County, granting summary judgment in favor of defendant Joshua H. Stein, Attorney
General. On 14 April 2021, the Supreme Court allowed the Attorney General's
petition for discretionary review as to additional issues and plaintiff New Hanover
County Board of Education's conditional petition for discretionary review. Heard in
the Supreme Court on 9 November 2021.

*Stam Law Firm, PLLC, by Paul Stam and R. Daniel Gibson, for plaintiff-appellee.*

*Joshua H. Stein, Attorney General, by James W. Doggett, Deputy Solicitor General, and Marc Bernstein, Special Deputy Attorney General, for defendant-appellant.*

*The Southern Environmental Law Center, by Mary Maclean Asbill, Brooks Rainey Pearson, and Blakeley E. Hildebrand, for intervenor-appellants.*

*Ward and Smith, P.A., by Christopher S. Edwards and Marcus Gadson, for amicus curiae Marcus Gadson.*

ERVIN, Justice.

¶ 1     This case arises from the Board of Education's challenge to the Attorney General's administration of an environmental enhancement grant program funded by payments made by Smithfield Foods, Inc., and several of its subsidiaries pursuant to a 2000 agreement between the Smithfield companies and the Attorney General. After the Board of Education filed an amended complaint alleging that the payments received from the Smithfield companies in accordance with the agreement amounted to civil penalties that should have been made available to the public schools pursuant to article IX, section, 7 of the North Carolina Constitution, the trial court granted summary judgment in favor of the Attorney General. On appeal, the Court of Appeals reversed, finding that the record disclosed the existence of genuine issues of material fact that precluded the entry of summary judgment in the Attorney General's favor. This Court reversed the Court of Appeals' decision on the grounds that the record did not disclose the existence of any genuine issues of material fact and that the Attorney General was entitled to judgment as a matter of law given that the undisputed evidence demonstrated that the funds provided by the Smithfield companies did not constitute civil penalties for purposes of article IX, section 7, of the North Carolina Constitution and remanded this case to the Court of Appeals for further proceedings

not inconsistent with its opinion. On remand, the Court of Appeals allowed the Board of Education's motion for supplemental briefing and filed an opinion holding that the funds made available by the agreement were subject to a newly enacted statute requiring all funds received by the State to be deposited in the State treasury and that the Board of Education's amended complaint sufficed to state a claim against the Attorney General pursuant to this statute. As a result, the determinative issue before this Court at this point is whether the Board of Education's amended complaint suffices to support a claim pursuant to N.C.G.S. § 147-76.1. After careful consideration of the record in light of the applicable law, we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for further remand to the Superior Court, Wake County, with instructions to reinstate its earlier order granting summary judgment in favor of the Attorney General.

## I. Factual Background

### A. Substantive Facts

¶ 2     After a five-year period during which hog waste lagoons in eastern North Carolina ruptured or overflowed and spilled millions of gallons of waste into the State's waterways, then-Attorney General Michael F. Easley entered into an agreement with Smithfield Foods, Inc., the state's largest hog-farming operation, and

several of its subsidiaries[1] on 25 July 2000, pursuant to which the Smithfield

companies agreed to

> (1) undertake immediate measures for enhanced environmental protection on Company-owned Farms and provide assistance to Contract Farmers in undertaking these same measures;
>
> (2) commit $15 million for the development of Environmentally Superior Technologies for the management of swine waste and to facilitate the development, testing, and evaluation of potential technologies on Company-owned Farms;
>
> (3) install Environmentally Superior Technologies on each Company-owned Farm in North Carolina and provide financial and technical assistance to Contract Farmers for the installation of these technologies
>
> (4) commit $50 million to environmental enhancement activities;
>
> (5) cooperate fully with the Attorney General to ensure compliance with applicable laws, regulations, policies and standards; and
>
> (6) in cooperation with the Attorney General and all other interested parties, take a leadership role in enhancing the effectiveness of the Albemarle-Pamlico National Estuary Program . . . .

In order to provide $50 million for use in funding environmental enhancement

activities in accordance with the agreement, the Smithfield companies agreed "to pay

---

[1] The subsidiaries involved in the agreement include Brown's of Carolina, Inc.; Carroll's Foods, Inc; Murphy Farms, Inc.; Carroll's Foods of Virginia, Inc.; and Quarter M Farms, Inc.

each year for 25 years an amount equal to one dollar for each hog in which the Companies . . . have had any financial interest in North Carolina during the previous year, provided, however, that such amount shall not exceed $2 million in any year," with these funds to "be paid to such organizations or trusts as the Attorney General will designate" as long as they were used "to enhance the environment of the State, including eastern North Carolina, to obtain environmental easements, construct or maintain wetlands and such other environmental purposes, as the Attorney General deems appropriate." In carrying out his obligations under the agreement, the Attorney General was authorized to consult with representatives from the Smithfield companies, the North Carolina Department of Environmental Quality,[2] and "any other groups or individuals he deems appropriate and may appoint any advisory committees he deems appropriate."

¶ 3 On 18 October 2002, the Smithfield companies, with the consent of then-Attorney General Roy A. Cooper, entered an escrow agreement with RBC Centura Bank[3] pursuant to which the Smithfield companies agreed to deposit all funds provided in accordance with the agreement into a bank account in which those funds would be held for disbursement directly to recipients by the Attorney General. In

---

[2] At the time the agreement was signed, the North Carolina Department of Environmental Quality was known as the North Carolina Department of Environment and Natural Resources.

[3] In 2012, RBC Centura Bank was acquired by PNC Financial Services.

accordance with the terms of the agreement, the Smithfield companies made an annual deposit into the relevant account around the anniversary of the date upon which they entered into their agreement with the Attorney General.

¶ 4        In January 2003, then-Attorney General Cooper established the Environmental Enhancement Grants Program for the purpose of "improv[ing] the air, water and land quality of North Carolina by funding environmental projects that address the goals of the agreement between Smithfield and the Attorney General." On an annual basis, the program solicits applications from governmental agencies and nonprofit entities, which are then reviewed by a panel consisting of representatives of the North Carolina Department of Justice, the North Carolina Department of Environmental Quality, the North Carolina Department of Natural and Cultural Resources, various academic institutions, and certain nonprofit organizations involved in conservation efforts. After the panel makes recommendations to the Attorney General concerning the manner in which the available grant funds should be disbursed, representatives of the Smithfield companies have the opportunity to make recommendations to the Attorney General as well. At the conclusion of this process, the Attorney General selects the recipients of the grants to be awarded in the exercise of his discretion and may designate up to $500,000 for use by the individual grant recipients. During the period from 2000 to 2016, the Attorney General awarded more than $25 million pursuant to the

agreement for the purpose of funding more than 100 separate initiatives that addressed a variety of environmental problems, with the work to be performed using these grant payments having included rehabilitating abandoned waste lagoons, conserving wildlife habitats, improving water quality, reducing pollution from agricultural and stormwater runoff, funding environmental research, and restoring forests, shorelines, wetlands, and streams across North Carolina.

## B. Procedural History

### 1. *The First Appeal*

On 18 October 2016, Francis X. De Luca filed a complaint in the Superior Court, Wake County, in which he alleged that the payments made by the Smithfield companies pursuant to the agreement constituted penalties for purposes of article IX, section 7, of the North Carolina Constitution, which requires that the "proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State . . . shall be faithfully appropriated and used exclusively for maintaining free public schools." In his complaint, Mr. De Luca requested that the Attorney General "be preliminarily and permanently enjoined from distributing payments made pursuant to [the agreement] to anyone other than to the Civil Penalty and Forfeiture Fund" and that the Attorney General be required to recover all program-related funds that had been distributed to grant recipients within the last three years and deposit those monies into the Civil Penalties and

Forfeiture Fund. On 25 January 2017, Mr. De Luca filed an amended complaint that added the New Hanover County Board of Education as an additional party plaintiff and substituted the current Attorney General, Joshua H. Stein, acting in his official capacity, as a party defendant.

¶ 6 On 12 October 2017, the trial court entered an order granting summary judgment in favor of the Attorney General on the grounds that payments made pursuant to the program did not constitute "penalties," "forfeitures," or "fines" that had been collected for "any breach of the penal laws of the State" subject to article IX, section 7, of the North Carolina Constitution. On the same date, the trial court entered an order allowing the North Carolina Coastal Federation, Inc., and Sound Rivers, Inc., to intervene as party-defendants. Mr. De Luca and the Board of Education noted an appeal from the trial court's summary judgment order to the Court of Appeals.

¶ 7 On 4 September 2018, a divided panel of the Court of Appeals filed an opinion holding that, while Mr. De Luca lacked standing to assert a claim against the Attorney General pursuant to article IX, section 7, of the North Carolina Constitution, the Board of Education was entitled to assert such a claim on the theory that, in the event that its claim against the Attorney General proved successful, it was entitled to receive a portion of the funds at issue in this case. *De Luca v. Stein*, 261 N.C. App. 118, 128 (2018). In addition, the Court of Appeals held that the record

disclosed the existence of "genuine issues of material fact" concerning the extent to which payments made pursuant to the agreement were intended to penalize the Smithfield companies or to deter them from violating the State's environmental laws in the future, rendering them subject to the requirements of article IX, section 7, of the North Carolina Constitution. *Id*. at 136. As a result, the Court of Appeals reversed the trial court's summary judgment order and remanded this case to the Superior Court, Wake County, for a trial on the merits with respect to the Board of Education's claim. *Id.*

¶ 8      After the Attorney General and the environmental intervenors noted an appeal to this Court on the basis of a dissent by former Judge Wanda Bryant and after we granted petitions for discretionary review with respect to additional issues filed by all of the parties to this case, this Court filed an opinion on 3 April 2020 in which it reversed the Court of Appeals' decision and remanded this case to the Court of Appeals for further proceedings not inconsistent with its opinion. *New Hanover Cty. Bd. of Educ. v. Stein*, 374 N.C. 102 (2020). Although this Court agreed that the Board of Education was authorized to assert a claim against the Attorney General pursuant to article IX, section 7, of the North Carolina Constitution, we noted that it did not have standing "to assert that the Attorney General lacked the authority to enter the agreement at all and appropriately made no such argument." *Id*. at 117. In addition, we held that the Court of Appeals had erred by determining that the record disclosed

the existence of a genuine issue of material fact concerning the extent, if any, to which payments made pursuant to the agreement constituted penalties for purposes of N.C. Const. art. IX, § 7, and concluded that the trial court had not erred by granting summary judgment in favor of the Attorney General with respect to the Board of Education's civil penalties clause claim. *Id.* at 123. As a result, we reversed the Court of Appeals' decision and remanded this case to the Court of Appeals "for any additional proceedings not inconsistent with this opinion." *Id.* at 123–24.

¶ 9     In a footnote that appeared at the end of our opinion, we acknowledged that the General Assembly had recently enacted N.C. Sess. L. 2019-250, which took effect on 1 July 2019, *id.* at 124 n.8, and that the statutory provision in question had amended chapter 147, article 6, of the North Carolina General Statutes by adding a new section that provided, in pertinent part, that, "[e]xcept as otherwise provided by law, all funds received by the State, including cash gifts and donations, shall be deposited in the State treasury," N.C.G.S. § 147-76.1(b) (2021); that, "[e]xcept as otherwise provided by subsection (b) of this section, the terms of an instrument evidencing a cash gift or donation are a binding obligation of the State," N.C.G.S. § 147-76.1(c); and that "[n]othing in this section shall be construed to supersede, or authorize a deviation from the terms of an instrument evidencing a gift or donation setting forth the purpose for which the funds may be used," N.C.G.S. § 147-76.1(c). After noting that "the parties [had] agreed that the provisions of newly-enacted

N.C.G.S. § 147-76.1 would not have the effect of mooting this appeal," we stated that we would not attempt to construe the new statute or to apply it to the facts of this case and expressed "no opinion as to what effect, if any, N.C.G.S. § 147-76.1 has on the agreement or any past or future payments made thereunder." *Stein*, 374 N.C. at 260.[4]

### 2. *The Second Appeal*

¶ 10        On 26 May 2020, the Board of Education filed a motion with the Court of Appeals seeking leave to file a supplemental brief addressing the applicability of N.C.G.S. § 147-76.1 to this case. The Court of Appeals allowed the Board of Education's motion for supplemental briefing on 18 June 2020. In its supplemental brief, the Board of Education argued that N.C.G.S. § 147-76.1 applied to payments made pursuant to the agreement on the grounds that those payments constituted "funds received by the State" in the form of a "cash gift" and that the Attorney General was required to deposit payments made pursuant to the agreement in the State treasury. After acknowledging that the General Assembly had not enacted § 147-76.1 until after the amended complaint had been filed, the Board of Education argued that appellate courts "must apply the law in effect at the time it renders its decision,"

---

[4] On 18 May 2020, this Court entered an order denying the Board of Education's petition for rehearing while modifying the wording contained in Footnote No. 8 as it appeared in our original opinion. The language quoted in the text of this opinion reflects the wording change that resulted from the modification that we made to the relevant footnote. *See* 374 N.C. 260 (2020).

citing *State v. Currie*, 19 N.C. App. 241, 243 (1973), *aff'd*, 284 N.C. 562 (1974). As a result, the Board of Education urged the Court of Appeals to hold that § 147-76.1 applied to the agreement and required the Attorney General to deposit all payments that had been received from the Smithfield companies since 1 July 2019 and all future payments received pursuant to the agreement into the State treasury.

¶ 11 In response, the Attorney General argued that, while it was "unclear if new section 147-76.1 applies to Smithfield's funding of the grant program," he would, "out of an abundance of caution," transfer the only payment that had been received from the Smithfield companies since 1 July 2019 to the State treasury and committed to ensuring that all future payments received from the Smithfield companies would be deposited into the State treasury as well. The Attorney General also asserted that N.C.G.S. § 147-76.1 had "no effect on the only claim that the [Board of Education had] assert[ed] in its complaint," which was that payments made pursuant to the agreement were "subject to [the civil penalties clause] of the Constitution and must go to the Civil Penalty and Forfeiture Fund." For that reason, the Attorney General contended that "[n]othing about the enactment of section 147-76.1 or the deposit of the funding for the grant program into the state treasury" altered this Court's decision with respect to the civil penalties issue, so that "this case [was] over," and that, by asking the Court of Appeals to "apply" § 147-76.1 to this case, the Board of Education was asking the Court of Appeals "to do nothing less than resolve a new

claim" that was completely unrelated to the claim asserted in the amended complaint despite the fact that "no such claim [had been] pleaded" in the Board of Education's amended complaint.

¶ 12      In addition, the Attorney General contended that, even if any claim that the Board of Education might assert pursuant to N.C.G.S. § 147-76.1 was properly before the Court of Appeals, that claim lacked merit.  More specifically, the Attorney General contended that the Board of Education lacked standing to assert a claim pursuant to § 147-76.1 on the theory that, unlike article IX, section 7, of the North Carolina Constitution, § 7, N.C.G.S. § 147-76.1 did not confer any "financial interest" upon the Board of Education, with "some generalized grievance about the operation of the grant program" being insufficient to support the assertion of a claim pursuant to 147-76.1.  Moreover, the Attorney General argued that a decision to deposit funds received pursuant to the agreement into the State treasury would have no effect upon the operation of the grant program because § 147-76.1(b) expressly provided that "the terms of an instrument evidencing a cash gift or donation are a binding obligation of the State."  For that reason, the Attorney General contended that the terms of his agreement with the Smithfield companies, including the provisions giving him the authority to administer the grant program, remained in effect even after the funds provided pursuant to the agreement had been deposited into the State treasury. Finally, the Attorney General claimed that, in the event that the Board of Education

was merely seeking to have funds received pursuant to the agreement deposited into the State treasury, any such claim had been rendered moot by virtue of the fact that the relevant funds had already been placed there.

¶ 13      On 15 December 2020, a divided panel of the Court of Appeals filed an opinion in which it reversed the trial court's summary judgment order and remanded this case to Superior Court, Wake County, for the entry of an order compelling the Attorney General to transfer "all funds presently held" and "all funds received under the [a]greement in the future" into the State treasury as required pursuant to N.C.G.S. § 147-76.1. *New Hanover Cty. Bd. of Educ. v. Stein*, 275 N.C. App. 132, 141 (2020). After noting that this Court had remanded this case to the Court of Appeals for "any additional proceedings not inconsistent with this opinion" and that compliance with this instruction "include[d] determination of the applicability of [§ 147-76.1]," the Court of Appeals concluded that it was entitled to resolve the issue posited in the Board of Education's supplemental brief on the merits without the necessity for a remand to Superior Court, Wake County, given that "[n]either party asserts there are any disputed facts" and that the issue of the applicability of § 147-76.1 to the monies that the Attorney General received pursuant to the agreement raised "purely a question of law." *Id.* at 136–38.

¶ 14      In reaching this conclusion, the Court of Appeals began by observing that the Attorney General had agreed that he had accepted the funds that had been made

available pursuant to the agreement on behalf of the State and that N.C.G.S. § 147-76.1 provided that "all funds received by the State, including cash gifts and donations, shall be deposited into the State treasury." *Id*. at 137; § 147-76.1(b). In light of that set of facts, the Court of Appeals concluded that "[t]he statute clearly mandates these are public funds, [that] they belong to taxpayers of the State, and [that they] are required 'to be deposited into the State treasury.' " *Stein*, 275 N.C. App. at 137 (quoting § 147-76.1(b)). According to the Court of Appeals, the fact that § 147-76.1 had not been enacted until after the filing of the amended complaint had no bearing upon the proper resolution of this case given that the Attorney General did not raise this issue on appeal and that, in any event, "[o]ur courts have held[ ] '[t]he general rule is an appellate court *must* apply the law in effect at the time it renders its decision.' " *Id*. (quoting *Currie*, 19 N.C. App. at 243). After acknowledging that current law should not be applied in the event that doing so "would result in manifest injustice or there is a statutory direction or legislative history to the contrary," *Bradly v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974), the Court of Appeals noted that the Attorney General had not argued that applying § 147-76.1 to the facts of this case would be manifestly unfair and that there was no "legislative history to indicate that [§ 147-76.1] does not apply to these admittedly public funds." *Stein*, 275 N.C. at 137.

¶ 15 The Court of Appeals rejected the Attorney General's contention that the Board of Education's claim pursuant to N.C.G.S. § 147-76.1 represented a new claim for

relief that had not been alleged in the amended complaint on the grounds that "[t]he Board's allegations are sufficient to provide the Attorney General with notice of the transactions and occurrences showing entitlement to relief and is well within the scope of [the Court of Appeals'] jurisdiction." *Id.* In support of this determination, the Court of Appeals pointed out that pleadings only needed to contain a "short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief," N.C.G.S. § 1A-1, Rule 8(a), so that "[t]he only question is whether the complaint 'gives notice of the events and transactions' that allows 'the adverse party to understand the nature of the claim.'" *Stein*, 275 at 138 (quoting *Haynie v. Cobb*, 207 N.C. App. 143, 149 (2010)). In addition, the Court of Appeals directed the parties' attention to N.C.G.S. § 1A-1. Rule 54(c), which provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings[,]" N.C.G.S. § 1A-1, Rule 54(c), and this Court's opinion in *Holloway v. Wachovia Bank & Trust Co.*, in which we held that "[t]he prayer for relief does not determine what relief ultimately will be awarded" but that, "[i]nstead, the court should grant the relief to which a party is entitled, whether or not demanded in his pleading," 339 N.C. 338, 346 (1994). As a result, the Court of Appeals held that, "[i]f the party makes a demand for relief, it is 'not crucial that the wrong relief has

been demanded' " given that the purpose of Rule 54(c), "is to provide 'whatever relief is supported by the complaint's factual allegations and proof at trial.' " *Stein*, 275 N.C. at 138 (quoting *Holloway*, 339 N.C. at 346).

¶ 16        In applying these legal principles to the facts of this case, the Court of Appeals stated that "[t]he Board's original prayer for relief seeks deposit of [the funds received pursuant to the agreement] into the State treasury in the Civil Penalty and Forfeiture Fund," that the Smithfield companies are "depositing $2 million dollars of admittedly public funds per year into a private bank account for public environmental purposes," and that, "under the [a]greement, the Attorney General purports to exercise sole authority to allocate and distribute these sums to his chosen recipients." *Id.* at 139. In addition, the Court of Appeals noted that the Board of Education had "requested a preliminary and permanent injunction against the Attorney General to prevent future distribution of these funds" and alleged that there was "a current and ongoing course of future payments of public funds under the [a]greement." *Id.*  According to the Court of Appeals,

> [w]hether the funds should be deposited into the State treasury for further appropriation and distribution or be earmarked for the Civil Penalty and Forfeiture Fund is immaterial as juxtaposed with deposits of public funds into a private bank account with distributions therefrom and recipients thereof within the Attorney General's sole discretion and control.

*Id.* As a result, the Court of Appeals held that the allegations contained in the amended complaint sufficed to state a claim for relief pursuant to N.C.G.S. § 147-76.1. *Id.*

¶ 17     In addition, the Court of Appeals noted that it had recently held that the General Assembly, rather than the Governor, had the authority to decide how certain federal block grant awards should be spent; that "North Carolina courts have not permitted members of the executive branch to exercise unbridled appropriation or expenditure of unbudgeted public funds"; and that N.C.G.S. § 147-76.1 "mandates the location and depository where the public money is to be deposited and held." *Stein*, 275 N.C. App. at 140 (citing *Cooper v. Berger*, 268 N.C. App. 468 (2019), *aff'd* 376 N.C. 22 (2020)). In light of that set of circumstances, the Court of Appeals concluded that "[t]he State Treasurer must receive, hold, and account for the disbursement of these funds in accordance with the stated environmental purposes of the [a]greement" and that " '[n]o money shall be drawn from the State treasury but in consequence of appropriations made by law . . . .' " *Id.* (quoting N.C. Const. art. V, § 7(1)). As a result, the Court of Appeals reversed the trial court's summary judgment order and remanded this case to Superior Court, Wake County, "for entry of an order to compel [the Smithfield companies] and the Attorney General to transfer and deposit all funds presently held and those to be paid and received from [the Smithfield companies]

under the [a]greement in the future into the State treasury in compliance with [§ 147-76.1]." *Id*. at 141.[5]

¶ 18        In dissenting from the Court of Appeals' decision, Judge Bryant concluded that the Board of Education lacked standing to assert a claim against the Attorney General pursuant to N.C.G.S. § 147-76.1. *Id*. at 142 (Bryant, J., dissenting). In Judge Bryant's view, the Board of Education had failed to advance any claim pursuant to § 147-76.1 at the time of its initial appeal, that the Board of Education could not have done so because the relevant legislation had not been enacted at that time, and that this Court had not addressed the issue at the time of its initial consideration of this case. *Id*. According to Judge Bryant, "[t]he issue raised by the Board concerning [N.C.G.S. § 147-76.1] is novel" and "is not, therefore, an 'additional proceeding' as contemplated by the Supreme Court's mandate" but is, instead, "an entirely new proceeding which a trial court of competent jurisdiction must rule on before this Court may consider arguments." *Id*. at 142–43.

¶ 19        In addition, Judge Bryant disagreed with the Court of Appeals' reliance upon N.C.G.S. § 1A-1, Rules 8 and 54(c), on the theory that "[t]he Rules of Civil Procedure

---

[5] Although the Court of Appeals remand order mandated that *all* funds presently held by the Attorney General pursuant to the agreement be deposited in the State treasury, the Board of Education acknowledges that this portion of the Court of Appeals' decision was erroneous given that the enacting legislation specified that § 147-76.1 would "appl[y] to funds received on or after" 1 July 2019 and asks that the Court refrain from affirming the Court of Appeals decision with respect to funds received by the Attorney General prior to 1 July 2019. *See* 2019 N.C. Sess. Laws 250, § 5.7.(c).

apply to our trial courts," citing N.C.G.S. § 1A-1, Rule 1 ("Scope of Rules"), and that, while the appellate courts "are authorized to determine whether the trial courts properly applied the Rules of Civil Procedure," they "are not authorized to substitute those rules for the rules which govern [their] review on appeal." *Id*. at 143–44. As a result, Judge Bryant concluded that the Court of Appeals had prematurely addressed the effect of § 146-76.1 upon the funds received pursuant to the agreement and should have refused to consider that issue on ripeness grounds. *Id*. at 144.

¶ 20          The Attorney General and environmental intervenors noted appeals to this Court from the Court of Appeals' decision based upon Judge Bryant's dissent. In addition, the Attorney General, the environmental intervenors, and the Board of Education filed separate petitions seeking discretionary review with respect to additional issues. On 14 April 2021, this Court allowed the discretionary review petitions filed by the Attorney General and the Board of Education while dismissing the environmental intervenors' discretionary review petition as moot.

## II.     Substantive Legal Analysis

### A. Standard of Review

¶ 21          This Court reviews decisions of the Court of Appeals for errors of law. N.C. R. App. P. 16(a); *State v. Melton*, 371 N.C. 750, 756 (2018). In determining whether a complaint states a claim for which relief can be granted, we use a de novo standard of review, taking as true the factual allegations contained in the complaint. *See, e.g.,*

*Krawiec v. Manly*, 370 N.C. 602, 604 (2018) (taking as true the factual allegations contained in a complaint in reviewing an order concerning a motion to dismiss for failure to state a claim for which relief can be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6)); *see also Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400 (2003), *aff'd per curiam*, 357 N.C. 567 (2003) (holding that appellate courts "must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct").

## B. The Board's Complaint

¶ 22          An analysis of the extent to which the Board of Education's amended complaint states a claim for relief pursuant to N.C.G.S. § 147-76.1 must begin with an examination of N.C.G.S. § 1A-1, Rule 8, which provides that a pleading must contain (1) "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief" and (2) "[a] demand for judgment for the relief to which [the plaintiff] deems himself entitled." As we have previously stated, "when the allegations in the complaint give sufficient notice of the wrong complained of[,] an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under *some* legal theory." *Stanback v. Stanback*, 297 N.C. 181, 202 (1970) (emphasis added), *overruled on other grounds by Dickens v. Puryear*, 302 N.C. 437,

448 (1981); *see also Sutton v. Duke*, 277 N.C. 94, 100 (1970). "[T]he policy behind notice pleading is to resolve controversies on the merits, after an opportunity for discovery, instead of resolving them based on the technicalities of pleadings." *Ellison v. Ramos*, 130 N.C. App. 389, 395 (1998). In evaluating whether a complaint adequately states a claim for relief for purposes of N.C.G.S. § 1A-1, Rule 12(b)(6), we take the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439 (1974); *see also Kaleel Builders, Inc v. Ashby*, 161 N.C. App. 34, 37 (2003) (noting that, in reviewing a trial court's decision to dismiss a claim for failure to state a claim for which relief can be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), "we read all allegations in the light most favorable to plaintiff").

¶ 23 In seeking to persuade us that the amended complaint fails to state a claim for relief pursuant to N.C.G.S. § 147-76.1, the Attorney General argues that, even though the applicable standard of review is a liberal one, it "does not relieve plaintiffs of the burden of making factual allegations that provide defendants with sufficient notice of the specific claims that plaintiffs might assert." In support of this assertion, the Attorney General directs our attention to *Sutton*, in which we recognized that the General Assembly intended "to require a more specific statement, or notice in more detail" by enacting N.C.G.S. § 1A-1, Rule 8, compared to the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure. *Sutton*, 277 N.C. at 100.

¶ 24    According to the Attorney General, the amended complaint failed to provide notice that the Board of Education was asserting a claim pursuant to N.C.G.S § 147-76.1, which had been enacted three years after the filing of the amended complaint, or any other claim relating to the location in which funds provided under the agreement were being deposited other than the Civil Penalties and Forfeiture Fund. On the contrary, the Attorney General argues that "the only ground that the Board identifies that provides it with standing to sue the Attorney General relates to a claim under the civil-penalty clause" of the state constitution. More specifically, the Attorney General notes that the factual allegations set out in the amended complaint revolve around the Board of Education's contention that the payments that the Smithfield companies had made pursuant to the agreement constituted civil penalties and that the only relief that the Board of Education had requested was that the payments that the Smithfield companies had made pursuant to the agreement should be deposited in the Civil Penalties and Forfeiture Fund. In the Attorney General's view, the absence of any allegation that the funds provided by the Smithfield companies under the agreement were being held outside the State treasury necessitated a conclusion that the Attorney General had not been provided with sufficient notice that the Board of Education was contending that the trial court should have ordered the Attorney General to deposit any funds that had been received pursuant to the agreement in the State treasury.

¶ 25     The Attorney General asserts that the Court of Appeals' reliance upon N.C.G.S. § 1A-1, Rule 54(c), which directs trial courts to award a prevailing party the relief to which it was entitled "even if the party has not demanded such relief in its pleadings," has no bearing upon the proper resolution of this case given that "it is 'well-settled' that relief granted under Rule 54 'must be consistent with the claims pleaded.'" *N.C. Nat'l Bank v. Carter*, 71 N.C. App. 118, 121 (1984)).  In the Attorney General's view, the Board of Education's request for relief in the form of an order that funds paid by the Smithfield companies pursuant to the agreement be deposited in the State treasury was not consistent with its original claim that the monies that the Smithfield companies had paid pursuant to the agreement violated article IX, section 7, of the North Carolina Constitution given that "a violation of the civil-penalty clause cannot be remedied simply by placing the proceeds of civil penalties into the state treasury."

¶ 26     In seeking to convince us that the amended complaint did, in fact, sufficiently allege a claim for relief predicated upon N.C.G.S. § 147-76.1, the Board of Education contends that it had "allege[d] that the Attorney General [was] receiving and disbursing State funds." According to the Board of Education, a complaint should not be dismissed simply because it fails to cite the statutory provision upon which the claim that it asserts rests and that a complaint is sufficient in the event that it alleges the relevant facts even though the claim being asserted is either mislabeled or not

labeled at all, citing in support of that proposition *Enoch v. Inman*, 164 N.C. App. 415, 417–18 (2004). In the Board of Education's view, as long as the complaint alleges facts that give the opposing party sufficient notice to permit it to understand the nature of the claim that is being asserted, that claim has been sufficiently stated.

¶ 27        According to the Board of Education, the "elements" of a claim pursuant to N.C.G.S § 147-76.1 are "(1) receipt of State funds and (2) those funds not being deposited into the State Treasury or those funds not being properly appropriated." In the Board of Education's view, the allegation in the amended complaint that the Smithfield companies "pa[id] North Carolina and deliver[ed] to the Attorney General of North Carolina up to \$2 million per year" that was "distribute[d] . . . to grant recipients for Supplemental Environmental Programs" sufficed to put the Attorney General on notice that he had improperly received and spent State money, thereby effectively informing the Attorney General that a claim has been stated pursuant to § 147-76.1 despite the absence of any reference to the relevant statutory provisions in the relevant pleading. Similarly, the Board of Education argues that the amended complaint sufficiently requests that the funds that the Smithfield companies provided under the agreement be deposited in the State treasury on the theory that a trial court should provide "whatever relief is supported by the complaint's factual allegations and proof at trial." *Holloway*, 339 N.C. at 346. As a result, the Board of Education contends that, since the factual allegations set out in the amended

complaint show that it is entitled to relief pursuant to § 147-76.1, the Court of Appeals appropriately ordered the Attorney General to deposit funds received pursuant to the agreement into the State treasury.

¶ 28      In an amicus curiae brief submitted in support of the Board of Education, Professor Marcus Gadson of the Campbell Law School argues that "the policy behind the notice theory of the present [pleading] rules is to resolve controversies on the merits, following opportunity for discovery, rather than resolving them on technicalities of pleading." *Smith v. City of Charlotte*, 79 N.C. App. 517, 528 (1986). According to Professor Gadson, the Board of Education's allegation that "the Attorney General ha[d] distributed [the funds provided the Smithfield companies] to grant recipients" was, in the event that all reasonable inferences are made in the Board of Education's favor, sufficient to "suggest[] that the Attorney General has taken the funds and then given them to grant recipients without the intermediate step of putting the money in the [State] treasury first." In addition, Professor Gadson claims a complaint is "not insufficient because it does not provide facts to expressly correspond to each element of a . . . claim" and that the proper test for determining the sufficiency of a complaint is "whether it is clear from the complaint's face that the [plaintiff] can *never* satisfy each element." Finally, Professor Gadson contends that a complaint should survive a dismissal motion in the event that "no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where

the allegations contained therein are sufficient to give a defendant notice of the nature and basis of plaintiffs' claim so as to enable him to answer and prepare for trial." *Forbis v. Honeycutt*, 301 N.C. 699, 702 (1979). According to Professor Gadson, the Board of Education's complaint passes muster in light of these criteria.

¶ 29        We agree with the Attorney General that the Board of Education's amended complaint did not suffice to state a claim for relief pursuant to N.C.G.S. § 147-76.1. The fundamental flaw in the arguments advanced by both the Board of Education and Professor Gadson is their reliance upon decisions addressing the role of the *trial court* in evaluating the sufficiency of pleadings. In *Enoch*, for example, the *trial court* dismissed a complaint alleging racial discrimination by a local government employee on the grounds that the plaintiff had based her claim on the Fourteenth Amendment to the United States Constitution rather than 42 U.S.C. § 1983, which is the means by which relief can be sought for federal constitutional violations by state and local government officials. *Enoch*, 164 N.C. App. at 417. Similarly, the issue before the Court in *Holloway* was whether the plaintiffs' failure to explicitly request an award of punitive damages in their prayer for relief precluded the recovery of such damages even though the factual allegations set out in the complaint and evidence elicited *at trial* supported an award of punitive damages. *Holloway*, 339 N.C. at 342. Finally, in *N.C. Consumer Power,* upon which Professor Gadson relies for the "cardinal principle that the Court should give the Board the benefit of all reasonable inferences

when evaluating the complaint," this Court was faced with whether the *trial court* had erroneously denied the defendant's dismissal motion in the face of an assertion that the plaintiff had failed to allege the existence of a justiciable controversy. 285 N.C. at 439.

¶ 30          In this case, however, the trial court was never asked to consider whether the Board of Education's complaint sufficed to state a claim pursuant to N.C.G.S. § 147-76.1 and could not have done so because the relevant statutory provision *did not exist* at the time that the trial court decided to grant summary judgment in the Attorney General's favor. As a result, this case does not involve "mislabel[ing]" or a "fail[ing] to label" a claim properly; instead, the Board of Education could not have asserted a claim based upon § 147-76.1 before the trial court because the amended complaint was filed years before the relevant statutory provision was enacted. In other words, the Court of Appeals lacked the authority to address and decide a wholly new claim that had been asserted for the first time on remand from this Court's initial decision. As Judge Bryant recognized in her dissenting opinion, "[t]he Rules of Civil Procedure apply to our trial courts" and "[w]e are not authorized to substitute those rules [for the rules that] govern our review on appeal[,]" i.e., the North Carolina Rules of Appellate Procedure. *Stein*, 275 N.C. App. at 143–44.

¶ 31          Although the Board of Education argues that it did not mislabel the claims that it asserted against the Attorney General "[b]ecause the law changed while [its]

appeal was pending," it cites no authority in support of the proposition that a plaintiff may assert for the first time in the appellate division that a complaint alleges the existence of a cause of action that did not exist at the time the plaintiff filed his or her complaint in the trial division. Aside from the chaotic conditions that could result in the appellate courts in the event that the procedures utilized by the Court of Appeals in this case became commonplace, allowing such a result to occur would effectively deprive the trial court of the ability to perform its primary role—either through the judge or a jury—as the finder of fact, since the trial court would not have had the opportunity to decide the issue of whether the record contains sufficient factual support for the proposed claim for relief. *See Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517 (2004) (stating that, "[o]n appeal, this Court is bound by the facts *found by the trial court* if supported by the evidence") (emphasis added); *Nate v. Ethan Allen*, 199 N.C. App. 511, 521 (2009) (noting that "[i]t is not the role of the appellate courts to make findings of fact."); *see also Winston Affordable Hous., LLC v. Roberts*, 374 N.C. 395, 403–04 (2020) (remanding a case to the trial court for additional factfinding after determining that the trial court had erroneously concluded that the plaintiff had waived the right to assert certain breach of contract claims).

¶ 32    In addition, the Court of Appeals' decision cannot be sustained upon the basis of the legal theory upon which the Board of Education has relied in attempting to

persuade us to affirm that decision. As this Court has previously held, "[u]nder the notice theory of pleading a statement of a claim is adequate if it gives sufficient notice of the claim asserted *to enable the adverse party to answer and prepare for trial . . . and to show the type of case brought.*" *Sutton*, 277 N.C. at 102 (emphasis added). Although "the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the substantive elements of a *legally recognized claim.*" *Estate v. Savino v. Charlotte-Mecklenburg Hospital Authority*, 375 N.C. 288, 297 (2020) (emphasis added) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 205 (1988)). In spite of the fact that the amended complaint sufficed to put the Attorney General on notice that the Board of Education contended that he had violated article IX, section 7, of the North Carolina Constitution, we are completely unable to see how the allegations set out in the amended complaint would have permitted the Attorney General to "prepare for trial" with respect to a claim that did not, at that time, exist or how the Board of Education could have pled or proved the elements of a "legally recognized claim" based upon a statutory provision that had not yet been enacted or even proposed.

¶ 33    In addition, after carefully analyzing the allegations set out in the amended complaint and after assuming, without in any way deciding, that the Board of Education has properly stated the elements of any claim for relief that might be available to it pursuant to N.C.G.S. § 147-76.1, we conclude that the Board of

Education would have been required to allege that the Attorney General had failed to deposit the funds that the Smithfield companies have paid in accordance with the agreement into the State treasury. The amended complaint is, however, completely devoid of any such allegation. Instead, the amended complaint simply alleges that the Attorney General had failed to deposit the relevant funds into the Civil Penalty and Forfeiture Fund, which is an entirely different kettle of fish. In addition, any contention that the allegation in the amended complaint that "the Attorney General has distributed these sums to grant recipients for Supplemental Environment[al] Programs" necessarily "suggests that the Attorney General has taken the funds and then given them to grant recipients without the intermediate step of putting the money in the treasury first" involves a logical leap that we are unable to take and rests upon an after-the-fact attempt to imply the existence of a factual allegation that would not have had any bearing upon the claim that the Board of Education actually asserted in the amended complaint had it been made.

¶ 34    The Court of Appeals' determination that the amended complaint suffices to assert a claim for relief pursuant to N.C.G.S § 147-76.1 seems even more dubious when one considers that the original cause of action that the Board of Education asserted in the amended complaint was constitutional, rather than statutory, in nature. In *Enoch*, the Court of Appeals determined that the factual allegations underlying the plaintiff's claim that a local employee had violated her federal

constitutional rights in contravention of the Fourteenth Amendment sufficed to support a claim for relief pursuant to 42 U.S.C. § 1983, a statute that provides the exclusive remedy for the infringement of federal constitutional rights by a state or local employee. *Enoch*, 164 N.C. App. at 418–19; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989). Simultaneously, however, the Court of Appeals rejected the plaintiff's contention that her complaint sufficed to state a claim for relief pursuant to 42 U.S.C. § 1981, which confers upon "[a]ll persons within the jurisdiction of the United States" the right to enter into and enforce contracts and to the "full and equal benefit of all laws and proceedings for the security of persons and property . . . ," reasoning that "the wrong complained of" in the complaint was repeatedly characterized as resting upon an alleged violation of the plaintiff's federal constitutional rights, with there being "no indication" that the plaintiff was attempting to enforce a statutory right pursuant to 42 U.S.C. § 1981. *Id*. at 428–29 (quoting *Stanback*, 297 N.C. at 202). Similarly, the "wrong complained of" in the amended complaint is an alleged violation of the Board of Education's constitutional rights as a beneficiary of the Civil Penalties and Forfeitures Fund, into which it believed that the funds provided by the Smithfield companies under the agreement had to be deposited, with there being "no indication" that the Board of Education

sought to enforce any substantive right pursuant to § 147-76.1 (to the extent that it had the ability to assert such a claim at all)[6] or any other statutory provision.

¶ 35        Furthermore, we reject the Court of Appeals' determination that it was entitled to consider the applicability of N.C.G.S. § 147-76.1 on remand because "[t]he general rule is that an appellate court must apply the law in effect at the time it renders its decision." *Currie*, 19 N.C. App. at 243. The language upon which the Court of Appeals relied in making this statement is derived from the decision of the Supreme Court of the United States in *Thorpe v. Housing Authority of Durham*, in which the Supreme Court considered whether a regulation that had been promulgated by the Department of Housing and Urban Development, which required that a tenant facing eviction from a federally assisted housing project be provided with notice of the reasons for the proposed eviction and an opportunity to respond to the allegations upon which the proposed eviction rested, applied to eviction proceedings that had been initiated before the regulation took effect. 393 U.S. 268, 269–70 (1969). In addressing this issue, the Supreme Court quoted Chief Justice John Marshall for the proposition that, "if subsequent to the judgment and before the decision of the

---

[6] As we have already discussed, the Board of Education has failed to cite any authority tending to suggest that it has any substantive rights under or the ability to assert a claim pursuant to § 147-76.1. Although we do not reach the question of the Board of Education's standing to assert a claim against the Attorney General pursuant to § 147-76.1, the absence of statutory language authorizing the Board of Education to assert such a claim casts further doubt upon the validity of its argument that the allegations that it made in support of the state constitutional claim asserted in the amended complaint sufficed to support a separate state statutory claim.

appellate court, a law intervenes and *positively changes the rule which governs*, the law must be obeyed, or its obligation denied." *Id*. at 282 (emphasis added) (quoting *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110 (1801)). The principle stated in *Thorpe* upon which the Court of Appeals relied in *Currie* and in this case has no application here.

¶ 36        The issue that the Board of Education attempted to raise in the amended complaint was whether payments made by the Smithfield companies in accordance with the agreement constituted civil penalties for purposes of article IX, section 7, of the North Carolina Constitution, which is an issue that this Court definitively resolved in its earlier decision in this case. As far as we have been able to ascertain, nothing in N.C.G.S. § 147-76.1 "positively changes the rule which governs" the proper resolution of the civil penalties issue. For that reason, nothing in *Currie* or the decisions upon which it relies provides any support for a determination that the enactment of a statute during the pendency of an appeal that does not have any direct bearing upon the proper resolution of the issue that is before the appellate court on appeal allows a party to assert a completely new claim for the first time in an intermediate appellate court on remand from the decision of a state court of last resort. As a result, the enactment of § 147-76.1 does not constitute a change in the applicable legal principles governing the claim asserted in the amended complaint that was addressed in the first round of appellate decisions in this case

¶ 37        Our decision to reverse the Court of Appeals and order the reinstatement of the trial court's original summary judgment order does not, contrary to the contentions that have been advanced by the Board of Education and Professor Gadson, completely deprive the Board of Education of the ability to assert any claim that might be available to it pursuant N.C.G.S. § 147-76.1.  Instead, the Board of Education remains free under our decision in this case to file a new complaint in the Trial Division of the General Court of Justice asserting any claims that might otherwise be available to it pursuant to § 147-76.1 or any other statutory provision. *See Stein*, 275 N.C. App. at 144 (Bryant, J., dissenting) (noting that "the appropriate venue for the Board's claim under [§ 147-76.1] is the trial court.").  Instead, our decision in this case reflects nothing more than a recognition that the Board of Education is not free to raise a completely new claim for the first time on appeal from a trial court order granting summary judgment in favor of the opposing party, a result that reaffirms the long-standing principle that a party cannot "swap horses between courts in order to get a better mount in the Supreme Court." *Weil v. Herring*, 207 N.C. 6, 10 (1934).  As a result, we hold that the Court of Appeals erred by considering and granting the Board of Education's request for relief pursuant to N.C.G.S. § 147-76.1.

¶ 38        We are unable to conclude our consideration of this case without taking notice of the unusual procedural posture in which it arrived at this Court.  After "revers[ing]

the decision of the Court of Appeals and remand[ing] this case to the Court of Appeals

for any additional proceedings not inconsistent with [that] opinion[,]" in our original

decision, *Stein*, 374 N.C. at 124, we stated in a footnote that,

> [a]lthough 2019 N.C. Sess. Laws 250, § 5.7.(c) provided that
> newly-enacted N.C.G.S. § 147-76.1 became effective on 1
> July 2019, and would be applicable to all funds received on
> or after that date, the parties agreed that the provisions of
> newly-enacted N.C.G.S. § 147-76.1 would not have the
> effect of mooting this appeal. As a result, we will refrain
> from attempting to construe N.C.G.S. § 147-76.1 or to apply
> its provisions to the facts of this case. We express no
> opinion as to what effect, if any, N.C.G.S. § 147-76.1 has on
> the agreement or on any past or future payments made
> thereunder.

*Id*. at 260.[7] On remand, the Court of Appeals determined that the language contained

in this footnote had "remanded to [the Court of Appeals] the task of determining

additional proceedings regarding [§ 147-76.1]." *Stein*, 275 N.C. App. at 139. In

reaching this conclusion, the Court of Appeals misapprehended the purpose for which

we included Footnote No. 8 in our original opinion. Instead of requesting the Court

of Appeals to consider any issues relating to § 147-76.1 on remand, Footnote No. 8

simply acknowledged the enactment of § 147-76.1 while expressing no opinion

concerning the manner in which that newly enactment statutory provision should be

construed or applied with respect to funds received from the Smithfield companies

pursuant to the agreement. Although this Court does, on occasion, remand cases to

---

[7] See Footnote 4 above.

the lower courts for the consideration of additional issues, *see, e.g., Farm Bureau v. Cully's Motorcross Park,* 366 N.C. 505, 514 (2013) (noting that, "[w]hen this Court implements a new analysis to be used in future cases, we may remand the case to the lower courts to apply that analysis"), we did not take any such step in this case and clarify that, in the event that we remand a case to the Court of Appeals or a trial court "for further proceedings not inconsistent with [its] opinion," such language should not be interpreted as an invitation to consider new claims that are unrelated to any contention that had been advanced before this Court, the Court of Appeals, or the trial court to that point in the litigation.

### III.    Conclusion

¶ 39        Thus, for the reasons set forth above, we hold that the Court of Appeals erred by concluding that the Board of Education's amended complaint sufficed to support a claim for relief pursuant to N.C.G.S. § 147-76.1 and remanding this case to Superior Court, Wake County, for the entry of an order requiring compliance with the Court of Appeals' interpretation of that newly enacted statutory provision. In light of this determination, we need not address the other arguments that have been advanced for our consideration by the parties. As a result, we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for further remand to Superior Court, Wake County, with instructions to reinstate the trial court's order granting summary judgment in favor of the Attorney General.

REVERSED AND REMANDED.

Justice BERGER did not participate in the consideration or decision of this case.