**Larry Don RICHTER et ux., Appellants,**

v.

**The PLAINS NATIONAL BANK OF LUBBOCK, Appellee.**

No. 17004.

Court of Civil Appeals of Texas.

Fort Worth.

March 21, 1969.

Rehearing Denied April 25, 1969.

Short & Helton, and R. M. Helton, Wichita Falls, for appellants.

Nelson, McCleskey & Harriger, and Harold O. Harriger, Lubbock, for appellee.

## OPINION

LANGDON, Justice.

This is a venue case.

Appellants purchased a residence in September, 1967, in Wichita Falls, Texas, which was encumbered by a loan held by Federal National Mortgage Association, hereinafter referred to as "Fannie Mae." This particular loan was serviced by J. B. McPherson Mortgage Co., Inc. It is uncontroverted that appellants never made a payment on the loan and that about the first of December, 1967 (December 12), appellant and his family moved in with his mother-in-law, leaving furniture in the house in question.

In December, 1967, or January, 1968, appellants received notice that "Fannie

Mae" would foreclose under its deed of trust and that the property would be sold on February 6, 1968. This foreclosure was in fact accomplished on February 6, 1968, by private sale after said notice, and the property conveyed to the Federal Housing Authority.

The appellee is a national bank chartered in Lubbock, Texas. It is a mortgage servicing agent for "Fannie Mae" and others and operates a branch office for mortgage servicing in Wichita Falls, Texas. There is no debtor-creditor relationship between the appellants and appellee.

On February 1, 1968, appellee acquired the mortgage loan servicing contracts of J. B. McPherson Mortgage Co., Inc. As a part of the transaction it retained a number of the McPherson employees, including C. H. Farmer, a defendant in the trial court herein, who was the loan servicing man at Wichita Falls.

The appellee was not in the mortgage loan servicing business prior to February, 1968, the date on which it acquired the loan servicing contracts of J. B. McPherson Mortgage Co., Inc. The foreclosure on appellants' property was in process at that time (February 1, 1968) by "Fannie Mae" which handles its own foreclosures. Appellee was involved solely as a servicing agent. It had no knowledge of the foreclosure here involved. This suit filed by appellant constituted appellee's first notice of any controversy.

Following a foreclosure it is customary under mortgage loan servicing contracts to winterize a property, if necessary, to have the property cleaned up, the locks changed, and to handle other such incidental matters on behalf of the investor before the servicing agent closes out the records on a particular property and returns such records to the investor.

In the case at bar, according to the allegations of the appellants and the testimony of the defendant Farmer, the house in question, in addition to debris, contained some of the appellants' furniture. On February 7, 1968, the defendant, Farmer, changed the locks on the house and on February 12, 1968, sold the furniture remaining in the house for $150.00. All this was done without the knowledge or consent of the appellee and in the absence of the appellants.

Based upon the above fact situation appellants filed their original petition for damages in the amount of approximately $70,000.00. Thereafter they filed an amended pleading asking for possession of the property. At this point appellee filed a disclaimer of any interest in the property.

The trial court sustained the plea of privilege on the basis of 12 U.S.C.A. § 94, which was invoked by the appellee.

The appellant contends that the court erred in sustaining the appellee's plea of privilege because the case as plead is a local action, one for damages to land, which under Texas law shall be brought only in Wichita County, Texas, where the land is situated and therefore the action is outside the scope of the Federal Venue Statute relied upon. Alternatively it is contended that if the action is transitory rather than local in nature that the appellee waived its privilege under the Federal Venue Statute and consents to venue in Wichita County, Texas.

We affirm.

The exclusive venue in a suit against a national bank is in the county where the bank is located for all actions *in personam*.

Title 12 U.S.C.A. § 94, provides:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

The fact that this statute is mandatory rather than permissive has been settled with reference to actions *in personam*.

In Mercantile National Bank at Dallas v. Langdeau, 331 S.W.2d 349 (Austin Tex.Civ. App., 1959):

"The question of law presented was stipulated to be:

" 'The only issue involved in said plea of privilege hearing was the issue of whether the provisions of the federal statutes entitled said Defendants to have said plaintiff's action against them transferred to the state court in Dallas County, Texas, or whether state statutes on venue of such action are controlling.' "

The Court of Civil Appeals held that the state statutes on venue of such action was not controlling.

The Supreme Court of Texas in Langdeau v. Republic National Bank of Dallas, 161 Tex. 349, 341 S.W.2d 161 (1960) in reversing the above holding held that the venue of the suit was governed by state statute fixing venue and not by federal statute providing venue for action against national banks. (12 U.S.C.A. § 94.) In the latter opinion the court stated: "The question presented is: Does Title 12 U.S.C.A. § 94, give a national bank, regardless of the provision of the Texas Venue Statutes, especially the provisions of Article 21.28, Section 4(f) of the Insurance Code, the right to have an action against it tried in the county of its domicile?"

In 1963 the U.S. Supreme Court in Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523, held as follows: " 'National banks are quasi-public institutions, and for the purpose for which they are instituted are national in their character, and, within constitutional limits, are subject to the control of Congress and are not to be interfered with by state legislative or judicial action, except so far as the lawmaking power of the Government may permit.' "

As against the contention that the federal statute was permissive rather than mandatory the court said, "Thus, we find nothing in the statute, its history or the cases in this Court to support appellee's construction of this statute. On the contrary, all these sources convince us that the statute must be given a mandatory reading."

The cases cited by the appellant in support of the argument that 12 U.S.C.A. § 94, does not abrogate Art. 1995(14), Vernon's Ann.Civ.St. are clearly cases involving actions in rem rather than actions *in personam*.

█ It appears obvious under the pleadings and the testimony adduced at the Plea of Privilege hearing that this case is one *in personam* in which money damages are sought.

Neither the mortgagee who foreclosed the mortgage on the property in question, the trustee who sold it, the purchaser who acquired it, nor the subsequent owners in possession of it were made parties to the suit. Appellee, as previously stated, filed a disclaimer as to any interest in the property.

The validity of the mortgage has not been questioned. The appellants have not made any effort to set the sale aside.

The suit is one for damages for conversion of personal property which is transitory in nature. At the hearing on the plea of privilege the appellants were asked:

"Q. They got rid of your furniture. There is the nature of your complaint. That is what the lawsuit is all about—somebody got rid of your furniture; is that correct?

"A. Yes, sir."

It is apparent from the record that the appellants were not the owners of the property in question nor were they in possession thereof or entitled thereto at any time pertinent to the suit. Additionally, as pointed out, no owner or anyone entitled to such possession has been brought into this suit.

It appears to be well established that the owner ("Fannie Mae") of the property was entitled to possession and that the prior owners (appellants), following foreclosure, were at most tenants at sufferance, assuming that such prior owners are in possession. In this case appellants were not in possession. According to Mr. Richter they last slept in the house about the first of December, 1967, and thereafter moved in with his wife's family. According to appellants' pleadings the defendant Farmer had the city utilities cut off in December, 1967.

Obviously appellants were not the owners of the property and have failed to show they were in possession or entitled thereto.

The appellants argue that the action is one for trespass to possession of land, a local action and that it is mandatory under Art. 1995(14) that such action be brought in the county in which the land is located, namely, Wichita County. Further, it is argued that the gravamen of the action is the trespass to land and not the damages. That from the land trespass, damages resulted both to the possession and to personalty situated thereon and that when such is plead in one count it does not create two causes of action.

It is further contended by appellants that under Exception 14, Art. 1995, V.A.C.S., they are required to establish only two venue facts, (1) that the suit is for damages to land, and (2) that the land is in the county in which the suit was filed.

■ "The nature of the plaintiff's claim usually is determined by reference to the petition. Exception 14 may not be evaded by framing the petition so that ostensibly it falls under the general venue rule or some other exception, and many opinions turn upon the true nature of the plaintiff's claim. Venue is determined ordinarily by the principal right asserted in the petition and the relief sought for the breach thereof, the decision depending upon the allegations of the petition and the controverting affidavit, and not upon the plaintiff's declaration that his suit is of a particular type and ordinarily not on testimony as to matters outside of the allegations. If two or more causes of action are joined, the first question is whether one of the claims falls within the exception, and the subordinate inquiry is whether the joinder permits all the controversies to be settled in the same action. Where the petition is not in the formal matrix of a trespass to try title action, but instead plaintiff elects to plead his title, venue fails where the allegations do not establish the plaintiff's title to support his claim. When the petition is formally sufficient, however, and the claim is asserted in good faith, plaintiff need not establish by extrinsic evidence at the venue hearing his interest or title. *But where the record on the venue issue, including evidence if necessary, establishes that the defendant pleading his privilege parted with all title to the land in question prior to the filing of the action, the suit is not one for the recovery of land or damages thereto within the exception.*" (Emphasis ours.)

■ In the same text see also § 4.22.3. — — (a) Suits for Recovery of Land (and cases cited thereunder). Also in the same text § 4.22.4. — — (b) Suits for Damages to Land: "Suits for damage to land include actions seeking recovery for 'an injury to the possession or to the freehold or estate.' The damage must be to the realty, or something located thereon and deemed by law a part of the land. * * *"

■ Based upon the record of this case, including the evidence and the admission of the appellants, we are of the opinion and hold that the suit involved is an action *in personam* and that under the authorities the exclusive venue is in the county where appellee, a national bank, is located.

All points of error are overruled and the action of the trial court in sustaining the plea of privilege on the basis of 12 U.S.C.A. § 94, is affirmed.

Affirmed.