SECURITY MILLS OF ASHEVILLE, INC., Respondent v. WACHOVIA
BANK & TRUST COMPANY, N.A., Petitioner

No. 102

(Filed 16 June 1972)

1. Banks and Banking § 10; Venue § 2— action against national bank—
venue

A transitory action against a national bank may be maintained
only in a court designated in 12 USC § 94 in the absence of a waiver,
express or implied, by the bank of its immunity from suit in other
courts.

2. Banks and Banking § 10; Venue § 2— action against national bank—
venue — waiver

A national bank's waiver of immunity from suit in a court not
designated in 12 USC § 94 may be implied from conduct of the bank
prior to the institution of the action.

3. Banks and Banking § 10; Venue § 2— action against national bank—
venue — federal court — state court

An action or proceeding brought against a national bank in a
federal court must be brought in the district in which such bank is
"established;" a suit brought against such bank in a state court
must be brought in the county or city in which the bank is "located."

4. Banks and Banking § 10; Venue § 2— action against national bank—
venue — federal court

An action or proceeding brought in a federal district or terri-
torial court against a national bank must be brought in the district
wherein the bank was founded, this being the district in which its
charter states it has its principal office.

5. Banks and Banking § 10; Venue § 2— action against national bank—
branch bank transaction — venue

When a national bank, "established" in this State, operates and
maintains in counties other than the county of its principal office
branches at which it conducts its general banking business, the
corporation is present at all times in each such branch and is "located"
therein within the meaning of 12 USC § 94; consequently, it is sub-
ject to suit in a state court in such county, otherwise having jurisdic-
tion, just as it is in the county wherein its principal office is located.

6. Banks and Banking § 10; Venue § 2— national bank — branch bank—
venue — waiver by operation of branch bank

Even if a national bank is not "located" in a county within the
meaning of 12 USC § 94, by maintaining and operating in the
county a branch wherein it conducts its general banking business,
the bank waives its privilege against being sued in such county in
an action arising out of its banking activities at such branch.

ON *certiorari* to review the decision of the Court of Appeals, reported in 13 N.C. App. 332, 185 S.E. 2d 434, vacating the denial by the District Court of BUNCOMBE County *(Allen, J.)* of the defendant's motion for change of venue and remanding the matter to the district court for further consideration.

The plaintiff instituted this action in the District Court of Buncombe County. The complaint alleges: (1) Plaintiff is a North Carolina corporation with its principal office and place of business in Buncombe County; (2) defendant is a national banking corporation "with an office in Asheville, Buncombe County, North Carolina"; (3) the defendant carelessly and negligently paid and cashed checks drawn payable to the plaintiff and presented, without authority, to the defendant by Joe P. Morris, the total amount of such checks being $5,301.96; (4) Morris had no authority, real or apparent, to endorse or cash checks payable to the plaintiff and the defendant knew or should have known of such lack of authority; (5) the defendant was negligent in that it cashed the checks though it knew or should have known that such checks had not been endorsed or presented by the plaintiff, or by one of its duly authorized agents; and (6) thereby the plaintiff has been damaged in the amount of $5,301.96 for the recovery of which sum, together with interest and costs, the plaintiff prays judgment.

In due time the defendant moved that the action be removed to the Superior Court of Forsyth County, North Carolina, for the reason that the defendant is a national banking association, chartered under the laws of the United States and is "located in the City of Winston-Salem, County of Forsyth, North Carolina." The defendant contends that 12 USC § 94 requires the granting of its motion.

At the hearing upon the motion, the defendant offered in evidence a certified copy of its charter as a national banking association. The charter provides:

"SECOND. The main offices of the Association shall be in Winston-Salem, County of Forsyth, State of North Carolina. The general business of the Association shall be conducted at its main office and its branches.

\*    \*    \*

"SEVENTH. The Board of Directors shall have the power to change the location of the main office to any

Security Mills v. Trust Co.

other place within the limits of Winston-Salem, North Carolina, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency; and shall have the power to establish new branches or change the location of any branch or branches of the Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency."

From the order of the district court denying the motion for change of venue, the defendant appealed to the Court of Appeals which, treating the appeal as a petition for certiorari, allowed the petition. The Court of Appeals vacated the order of the district court and remanded the matter to the district court for a new hearing upon the motion on the ground that the district court had failed to make a finding as to whether the branch of the defendant at which the business complained of was transacted is located in Buncombe County. The Court of Appeals held that a banking institution is located in each county in which it maintains a branch for conducting business and that 12 USC § 94 permits an action against a national banking association to be prosecuted in the appropriate court in the county in which is located the branch office at which the business giving rise to the action is located.

Upon the petition of the defendant, certiorari was granted to review the decision of the Court of Appeals.

Following the decision of the Court of Appeals, the parties stipulated that the defendant "maintains in Asheville, Buncombe County, the branch bank which transacted the business complained of in the plaintiff's complaint," the defendant neither admitting nor denying the truth or falsity of any allegation in the plaintiff's complaint.

By affidavit of its assistant vice president, set forth in the record, the defendant states that it "operates branch offices in 63 towns and cities in the State of North Carolina."

*Van Winkle, Buck, Wall, Starnes and Hyde, by Emerson D. Wall, for defendant.*

*Hendon and Carson, by George Ward Hendon, for plaintiff.*

LAKE, Justice.

The venue of suits against national banks is governed by 12 USC § 94, which provides:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial Court of the United States held within the district, in which such association may be *established*, or in any State, county, or municipal court in the county or city in which said association is *located* having jurisdiction in similar cases." (Emphasis added.)

[1] It is now settled that this statute is mandatory, not permissive as was supposed by this Court in *Curlee v. National Bank*, 187 N.C. 119, 121 S.E. 194, and that, in the absence of a waiver by the bank, a suit against a national bank may be maintained only in a court designated in this statute. *Mercantile National Bank v. Langdeau*, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed. 2d 523. Thus, *Curlee v. National Bank, supra,* which was decided prior to this determination by the Supreme Court of the United States in the Langdeau case, is no longer authoritative and is overruled, insofar as it relates to the proper venue of an action against a national bank which has not waived its immunity under the above quoted Act of Congress.

[1, 2] It is equally well settled that this statutory provision applies to transitory actions only, *Casey v. Adams*, 102 U.S. 66, 26 L.Ed. 52, and that the national bank may waive its immunity from suit in other courts, which waiver may be express or implied. *First National Bank of Charlotte v. Morgan*, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282. Such waiver may be implied from the conduct of the bank prior to the institution of the action. *Lichtenfels v. Bank*, 260 N.C. 146, 132 S.E. 2d 360; Annot., 1 A.L.R. 3rd 904. The present action is, of course, transitory.

The questions presented by this appeal are, therefore: (1) Is the defendant bank "located" in Buncombe County, where it maintains a branch and conducts a general banking business, within the meaning of the Act of Congress? (2) If not, has the defendant, by maintaining such branch in Buncombe County, waived its statutory immunity to suit in the court of the county otherwise having jurisdiction of the action, the suit arising out of business transacted at such branch bank?

Our attention has been directed to no decision of the Supreme Court of the United States which determines either of these questions. Decisions of the lower federal courts, construing this Act of Congress, are not binding upon us, notwithstanding our respect for the tribunals which rendered them, and their decisions with reference to the proper venue as between the several federal courts are not in point because of the language of the statute. We must, therefore, construe this Act of Congress ourselves and determine whether the defendant is "located" in Buncombe County, within the meaning of the Act.

[3]  It is to be noted that an action or proceeding brought against a national bank in a federal court must be brought in the district in which such bank is "established." On the other hand, a suit against such bank in a state court must be brought in the county or city in which the bank is "located." Each of these words, "established" and "located," has several connotations. Some of the connotations of "established" overlap those of "located," but the words are not synonymous. It is not lightly to be supposed that Congress used both words in the same sentence carelessly or inadvertently. The presumption is that it used them deliberately, having in view their different connotations.

[4]  The definition of "establish" in Webster, New International Dictionary, Second Edition, most applicable to the use of the word in this statute is: "To *originate* and secure the permanent existence of; *to found;* to institute; to *create* and regulate; said of a colony, a state, or *other institution.*" (Emphasis added.) To the same effect, see: Webster, Seventh New Collegiate Dictionary; Century Dictionary (1889 Edition) ; Black's Law Dictionary. By the terms of the Act of Congress, therefore, an action or proceeding brought in a federal district or territorial court against a national bank must be brought in the district wherein the bank was founded, this being the district in which its charter states it has its principal office.

Obviously, a bank is "located" where it is "established," but this does not preclude the possibility that it may also be located elsewhere. Webster, New International Dictionary, Second Edition, defines "locate" to mean "to set or establish in a particular spot or position; to station." Webster's Seventh New Collegiate Dictionary defines "locate" to mean "to establish oneself or one's business: SETTLE." The Century Dictionary (1889

Edition) defines "locate" to mean "to fix in a place; establish in a particular spot or position; place; settle: as to *locate* one's self in a certain town or street." (Emphasis added.) Black's Law Dictionary does not define "located" but cites *Raiola v. Los Angeles First National Trust & Savings Bank,* 233 N.Y.S. 301, 304, as holding that a bank is "located" in the place specified in its original certificate, which it obviously is, the question being whether it can be located elsewhere also. Black's Law Dictionary also cites *Dairy Sealed v. Ten Eyck,* 288 N.Y.S. 641, 649, as holding, "Commissioner of Agriculture and Markets or any head of bureau is 'located' not only in principal office, but in authorized branch office." Thus, the word "located" does not point exclusively to the birthplace of an institution as does the word "established." Congress having used the one word with reference to suits in federal courts and the other word with reference to suits in state courts must have intended to draw this distinction.

Another definition of "locate" given by Webster's New International Dictionary, Second Edition, is "to search for and discover the position of; as to *locate* an enemy; to *locate* a fire." This element of discovery, inherent in the word "locate" but not in the word "establish," appears to have been in the mind of the Court in *Lapinsohn v. Lewis Charles, Inc.,* 212 Pa. Super. 185, 240 A. 2d 90, cert. den., 393 U.S. 952, when it said a national bank, by setting up a branch to conduct a general banking business, manifested an intent "to be found" in that jurisdiction and so had waived its statutory immunity to suit there.

We do not overlook the fact, noted in *Mercantile National Bank v. Langdeau, supra,* that the original National Banking Act of 1863 did not make mention of suits against such banks in state courts. Though the provision of the Act, relating to suits in state courts, came into it by later legislation, we must conclude that Congress intended a somewhat different rule to apply as between suits brought in federal courts and suits brought in state courts. Otherwise, it would hardly have switched from "established" to "located."

Cases in which a national bank was sued in a court of a state where it was not "established," in which it maintained no branch and in which it carried on no banking business, are distinguishable from the matter before us and broad statements

therein to the effect that a national bank may be sued only in the judicial district in which it is "established" are not convincing in the present connection. See *Michigan National Bank v. Robertson*, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed. 2d 961; *Schmitt v. Tobin*, 15 F. Supp. 35 (D.C. Nevada) ; *Cadle v. Tracy*, Fed. Case No. 2279 (S.D.N.Y.) ; *Crocker et al. v. Marine National Bank of New York*, 101 Mass. 240. Similarly distinguishable are cases in which a national bank was sued in a state court, within the state where it was "established" but in a county other than that of its principal office, there being nothing to indicate the maintenance of a branch in the county in which suit was brought. *Monarch Wine Co. v. Butte*, 249 P. 2d 291 (Cal. App.) ; *Richter v. Plains National Bank of Lubbock*, 440 S.W. 2d 76 (Tex. Civ. App.). Also distinguishable is *Leonardi v. Chase National Bank*, 81 F. 2d 19, cert. den. 298 U.S. 677, in which the defendant's principal office was in the Southern District of New York, suit being brought in the United States District Court for the Eastern District of New York, in which latter district it maintained a branch. The court held that a national bank is not "established" within each district in which it operates a branch, but is "established" only in the district wherein its principal office, as stated in its charter, is located. Since the bank could be sued in a federal court only in the district where it was "established," the dismissal of the action brought in a different district was proper.

We are not inadvertent to the case of *Gregor J. Schaefer Sons, Inc. v. Watson*, 272 N.Y.S. 2d 790, in which the Appellate Division, in a memorandum opinion, stated, "For the purposes of venue under the statute [12 USC § 94], a national bank is located at the place listed in its certificate of incorporation as its principal place of business or main office, even though it maintains branches in other counties of the state." See also, *Tuthill v. George S. May International Co., et al*, 285 N.Y.S. 2d 317 (Supreme Court). The only authorities cited by the Appellate Division in support of its decision are federal cases hereinabove cited and distinguished. In our opinion, the better view is thus stated in the dissenting opinion of Beldock, P. J., and Christ, J.: "In our opinion, it is unreasonable to hold that this appellant with 15 branches in Suffolk County is not located in Suffolk County. The cases dealing with venue in Federal Courts are not in point. The statute provides that such suits must be brought in the district in which the bank is

Security Mills v. Trust Co.

'established,' which means where the principal place of business of the bank is located."

**[5]** We conclude that when a national bank, "established" in this State, operates and maintains in counties, other than the county of its principal office, branches at which it conducts its general banking business, the corporation is present at all times in each such branch and is "located" therein within the meaning of this Act of Congress. Thus, it is subject to suit in a state court in such county, otherwise having jurisdiction, just as it is in the county wherein its principal office is located.

**[6]** If, however, the defendant bank is not "located" in Buncombe County within the meaning of this Act of Congress, we hold that by maintaining and operating in Buncombe County a branch wherein it conducts its general banking business, the defendant has waived its privilege against being sued in Buncombe County in an action arising out of its banking activities at such branch. In *Lapinsohn v. Lewis Charles, Inc., supra,* after holding that a national bank is not "located" in a county other than that of its principal office, though it maintains a branch therein, the Pennsylvania Court said, "If a national bank avails itself of a jurisdiction by setting up a branch to conduct general banking business, it has manifested an intent to be found in that jurisdiction for purposes of suits arising out of any business conducted there." To the same effect are: *Helco, Inc. v. First City National Bank,* 333 F. Supp. 1289 (D.C. Virgin Islands), and *Frankford Supply Co., Inc. v. Matteo,* 305 F. Supp. 794 (E.D. Pa.).

The defendant operates 63 branches scattered throughout North Carolina. It has opened and operates these branches voluntarily for the purpose of competing with other banks in this State for the deposits and other banking business of the public. It may, and frequently does, institute suits in the counties where it operates such branches. It is not unreasonable to conclude that, by so doing, it has consented to being sued in the county wherein each such branch is maintained in any controversy arising out of a transaction in the operation of such branch, notwithstanding any immunity it may be given to such suits by 12 USC § 94.

To require a depositor, or other customer, of one of the defendant's branches to incur the expense and inconvenience of going to Forsyth County to maintain such action would be a

gross injustice. In the case of the small depositor, the hardship could well preclude his resort to the courts despite the justice of his cause. We decline to give an ambiguous Act of Congress such a construction in the absence of a decision by the Supreme Court of the United States clearly so requiring.

The parties having stipulated in this Court, subsequent to the decision of the Court of Appeals, that the defendant maintains a branch bank in Buncombe County and that this action arises out of transactions therein, the remand and further hearing directed by the Court of Appeals would now serve no useful purpose. The matter is, therefore, remanded to the Court of Appeals for the entry by it of a judgment affirming the judgment of the District Court of Buncombe County.

Reversed and remanded.