IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-558

No. COA21-374

Filed 16 August 2022

Guilford County, No. 19-CVD-2593

JENNIFER SNIPES, Plaintiff,

v.

TITLEMAX OF VIRGINIA, INC., Defendant.

Appeal by plaintiff from order entered 24 March 2021 by Judge Caroline Pemberton in District Court, Guilford County. Heard in the Court of Appeals 11 January 2022.

> *Brown, Faucher, Peraldo & Benson, PLLC, by Drew Brown, for plaintiff-appellant.*

> *Troutman Pepper Hamilton Sanders, LLP, by Jason D. Evans and William J. Farley III, for defendant-appellee.*

STROUD, Chief Judge.

¶ 1 Plaintiff, Jennifer Snipes, appeals from an order vacating an arbitration award in her favor and dismissing her claims against Defendant, TitleMax of Virginia. Because the trial court properly reviewed the arbitrator's award based on the essence of the contract doctrine and, upon *de novo* review, properly found the arbitrator's award did not draw its essence from the parties' contract, we affirm the *vacatur* of the arbitrator's award. But because the trial court could not dismiss Plaintiff's claims

based on its *vacatur* of the arbitrator's award, we remand for the trial court, in its discretion, to either direct a rehearing by the arbitrator or decide the issues originally sent to the arbitrator.

## I.    Background

¶ 2        This case arises out of a "Motor Vehicle Title Loan Agreement" between Plaintiff and Defendant from August 2016 in which Plaintiff received a loan of just under $2,500 secured by title to her vehicle with an interest rate and fees of approximately 144%.   While Plaintiff lives in North Carolina, she traveled to Virginia, where Defendant is based, to enter into the Loan Agreement.   The Loan Agreement contains two provisions pertinent to this appeal.   A provision entitled "Governing Law, Assignment and Amendment" provides, in relevant part, "This Loan Agreement shall be governed by the laws of the State of Virginia, except that the Waiver of Jury Trial and Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ('FAA')."

¶ 3        The "Waiver of Jury Trial and Arbitration Provision" provides for an arbitrator to "issue a final and binding decision" on any dispute that arises under the Loan Agreement, with the term "dispute" being "given the broadest possible meaning and includ[ing], without limitation" *inter alia* "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to th[e] Loan Agreement." (Capitalization altered.)

¶ 4          On 14 January 2019, Plaintiff filed a complaint against Defendant arising out of the Loan Agreement. Specifically, Plaintiff alleged the Loan Agreement violated "the North Carolina Consumer Finance Act, North Carolina usury statutes, and the North Carolina Unfair and Deceptive Trade Practices Act." "Plaintiff also sought punitive damages." Pursuant to the Loan Agreement's arbitration provision, Plaintiff included a motion to compel arbitration in her complaint explaining she filed the action "to toll the application of the statute of limitations." In response, Defendant filed a motion to dismiss the case for improper venue under North Carolina Rule of Civil Procedure 12(b)(3), N.C. Gen. Stat. § 1A-1, Rule 12(b)(3) (2019), on the grounds Plaintiff did not live in the county where the case was filed and Defendant did not have an office there.

¶ 5          On 22 May 2019, the trial court entered an order denying Defendant's motion to dismiss, granting Plaintiff's motion to compel arbitration, and staying litigation "pending completion of the arbitration ordered." The parties then "arbitrated their dispute on the papers" they had submitted "without an evidentiary hearing."

¶ 6          On 16 November 2020, the arbitrator issued an award in favor of Plaintiff for approximately $12,800—representing treble damages. In the award, the arbitrator explained he had to choose between applying Virginia law and applying North Carolina law to the dispute as well as the importance of the difference between those two options:

> This case involves the extension of a loan to Claimant, a North Carolina resident, secured by an automobile titled in North Carolina, where the loan documents were signed in Respondent's office in Virginia. The loan carried an interest rate of nearly 150%, a rate that clearly violates the North Carolina Consumer Finance Act (the "CFA"), but that is arguably not illegal in Virginia. The question to be resolved is whether the language of the CFA applies to the transaction at issue here.

Despite this recognition, the arbitration award never mentioned the Loan Agreement's express Virginia choice of law provision. The arbitration award exclusively focuses on North Carolina's Consumer Finance Act in its primary analysis before also discussing an argument Defendant made based on the Commerce Clause of the United States Constitution and addressing damages and fees.

¶ 7 The same day the arbitrator entered his award, Plaintiff filed a motion to confirm the arbitration award and enter judgment. On 15 February 2021, Defendant filed a motion to vacate the arbitration award. In its motion, Defendant argued the trial court should vacate the arbitration award for two reasons: (1) because the award "strayed both from the interpretation and application of the agreement" in that it *inter alia* "refus[ed] to enforce the parties' valid choice-of-law provision" and (2) because the arbitrator "showed a manifest disregard for the law" by refusing to enforce the choice-of-law provision and by ignoring "a well-established principle of constitutional law," the Commerce Clause. As part of its prayer for relief in its motion to vacate, Defendant also asked the trial court to dismiss Plaintiff's claims and enter

judgment on its behalf.

¶ 8        On 24 March 2021, the trial court entered an order "granting Defendant's motion to vacate [the] arbitration award and denying Plaintiff's motion to confirm [the] arbitration award." (Capitalization altered.) After making Findings of Fact on the procedural history of the case, the trial court made Conclusions of Law explaining how it could only vacate an arbitration award on limited grounds including manifest disregard of law and an award failing to draw its essence from the parties' agreement. Applying those doctrines to the arbitration award, the trial court concluded the Loan Agreement "contains an unambiguous, valid, and enforceable choice-of-law provision confirming that Virginia law applies" and the arbitration award "demonstrated a manifest disregard of the law" and "fail[ed] to draw its essence from the Loan Agreement" by ignoring the choice of law provision favoring Virginia law and instead applying North Carolina law. As a result, the trial court granted Defendant's motion to vacate the arbitration award and denied Plaintiff's motion to confirm the arbitration award. Based on its decision to vacate the arbitration award, the trial court also dismissed Plaintiff's claims stating: "Plaintiff's claims against Defendant are hereby dismissed with prejudice."

¶ 9        On 20 April 2021, Plaintiff filed a written notice of appeal from the trial court's order.

## II.    Analysis

¶ 10        Plaintiff contends the trial court erred by "granting Defendant-Appellee's motion to vacate [the] arbitration award" and by "denying Plaintiff-Appellant's motion to confirm [the] arbitration award." (Capitalization altered.)  As both parties agree, these two arguments are two sides of the same coin because under the Federal Arbitration Act ("FAA")[1] a court "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the Act.  9 U.S.C. § 9.  We first provide background on the law governing *vacatur* under the FAA to help situate the parties' specific arguments on the trial court's order vacating the arbitrator's award.

¶ 11        "The FAA declares a liberal policy favoring arbitration," such that "[j]udicial review of an arbitration award is severely limited in order to encourage the use of arbitration and in turn avoid expensive and lengthy litigation."  *See Carpenter v. Brooks*, 139 N.C. App. 745, 750–51, 534 S.E.2d 641, 645 (2000) (citing *Moses H. Cone*

---

[1] The FAA governs this case because the title loan between Plaintiff and Defendant specifies the arbitration clause "is governed by the" FAA.  *See In re Fifth Third Bank, Nat. Ass'n*, 216 N.C. App. 482, 487, 716 S.E.2d 850, 854 (2011) (explaining the FAA governed because the arbitration clause of the promissory note in question stated the FAA would "apply to the construction, interpretation, and enforcement of this arbitration provision" (quotations omitted)).  As the Supreme Court of the United States has explained, state courts have a "prominent role in arbitral enforcement" under the FAA.  *See Badgerow v. Walters*, ___ U.S. ____, _____, 212 L. Ed. 2d 355, 363 (2022) (quotations and citation omitted) (stating as part of an analysis on how the FAA does not provide independent jurisdiction for "applications to confirm, vacate, or modify arbitral awards (under Sections 9 through 11)").

*Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765 (1983)) (including

"liberal policy" quote immediately before listing FAA grounds for vacating an

arbitration award); *First Union Securities, Inc. v. Lorelli*, 168 N.C. App. 398, 399–

400, 607 S.E.2d 674, 676 (2005) (including other quote immediately after listing FAA

grounds for *vacatur*).  This policy favoring arbitration by limiting judicial review

manifests in two ways.  First, "under the FAA, an arbitration award is presumed

valid, and the party seeking to vacate it must shoulder the burden of proving the

grounds for attacking its validity." *First Union*, 168 N.C. App. at 400, 607 S.E.2d at

676 (quoting *Carpenter*, 139 N.C. App. at 751, 534 S.E.2d at 646) (internal quotations,

citations, and alterations omitted).

¶ 12        Second, the FAA limits *vacatur* of arbitration awards to the situations listed

in § 10 of the statute.  *See Carpenter*, 139 N.C. App. at 750–51, 534 S.E.2d at 645–46

(explaining "[u]nder the FAA, arbitration awards may be vacated only in limited

situations" before listing the grounds in § 10).  Specifically, § 10(a) limits *vacatur* to

the following situations:

> (1) where the award was procured by corruption, fraud, or
> undue means;
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in
> refusing to postpone the hearing, upon sufficient cause
> shown, or in refusing to hear evidence pertinent and
> material to the controversy; or of any other misbehavior by
> which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. "The text of the FAA" and the "national policy favoring arbitration with just the limited [judicial] review needed to maintain arbitration's essential virtue of resolving disputes straight away" in turn "compel[] a reading of the §[] 10 . . . categories as exclusive." *In re Fifth Third Bank*, 216 N.C. App. at 487, 716 S.E.2d at 854 (alterations from original omitted and own alterations added) (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588, 170 L. Ed. 2d 254, 265 (2008)).

¶ 13        The exclusivity of the § 10(a) categories does not require a party seeking *vacatur* of an arbitration award or a court vacating such an award to cite the specific language of the section; rather courts have at times read other doctrines into § 10's specific text. For example, the Supreme Court of the United States recognized the essence of the contract doctrine fits within § 10(a)(4)'s provision for *vacatur* when the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4); *see Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569–70, 186 L. Ed. 2d 113, 119–20 (2013) (explaining a court can overturn the arbitrator's determination under § 10(a)(4) only when the arbitrator exceeded his contractually delegated authority by issuing an award based on his own policy determinations rather than "drawing its essence from the contract" (quoting

*Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 62, 148 L. Ed. 2d 354 (2000) (alterations omitted))).

¶ 14          The essence of the contract doctrine pre-existed *Hall Street Associates*'s declaration § 10's categories were exclusive. *See Eastern Associated Coal Corp.*, 531 U.S. at 62, 148 L. Ed. 2d at 360 (a case from 2000 stating, "[A]n arbitrator's award must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." (quotations and citations omitted)). But, post-*Hall Street Associates*, the doctrine was incorporated into one of the categories within § 10(a). *See Oxford Health Plans*, 569 U.S. at 569–70, 186 L. Ed. 2d at 119–20 (laying out the essence of the contract doctrine as part of determining "the arbitrator did not exceed his powers" under § 10(a)(4) (alterations omitted)).

¶ 15          Not all pre-existing doctrines necessarily survived *Hall Street Associates*, however. For example, before *Hall Street Associates*, courts would vacate arbitration awards when the arbitrator "manifestly disregarded the law." *See In re Fifth Third*, 216 N.C. App. at 487–89, 716 S.E.2d at 854–55 (quoting Fourth Circuit case *Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d 520, 529 (4th Cir. 2007), to explain manifest disregard of the law after recognizing appellant only cited cases from before *Hall Street Associates*). As this Court has recognized, "the United States Supreme Court has 'not decided whether manifest disregard survives the decision in *Hall Street Associates* . . . .'" *In re Fifth Third Bank*, 216 N.C. App. at 487–

88, 716 S.E.2d at 854 (alterations from original omitted) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3, 176 L. Ed. 2d 605, 616 n.3 (2010)); *see also Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012) (noting a federal circuit court split on the issue because the Fourth Circuit considers manifest disregard still in existence in contrast to the Fifth and Eleventh Circuits).[2]

¶ 16        With this background on the FAA and the limited grounds on which it allows judicial review, we now return to Plaintiff-Appellant's specific arguments. Plaintiff argues three grounds on which we should reverse the trial court's decision to vacate the arbitration award: (1) "the trial court impermissibly conducted a *de novo* review" of the award; (2) "the essence of the contract doctrine does not apply" such that the trial court could not have vacated the award on that ground; and (3) the arbitrator "did not commit a manifest disregard of law" as the trial court found.[3] (Capitalization

---

[2] We cite *Wachovia Securities* on the circuit-split issue only for ease of reference because the trial court relied on it in its order vacating the arbitration award here. For a discussion of the circuit split more broadly, *see generally* Stuart M. Boyarsky, *The Uncertain Status of the Manifest Disregard Standard One Decade After* Hall Street, 123 Dick. L. Rev. 167, 187–205 (2018) (recounting *Hall Street Associates* and the ensuing circuit split with decision from each circuit).

[3] Plaintiff also includes a sub-section arguing the arbitrator "had no obligation to further explain his rejection of [Defendant]'s choice-of-law provision" in the award such that the lack of explanation "certainly was no basis on which the trial court could properly vacate" the award. The trial court's order included a Conclusion of Law explaining "[t]he arbitrator demonstrated a manifest disregard of the law by ignoring and refusing to enforce the unambiguous choice-of-law provision in the Loan Agreement." As a result, the further explanation argument best fits within Plaintiff's broader manifest disregard of law argument.

altered.)

¶ 17          We first address Plaintiff's argument the trial court "impermissibly conducted a *de novo* review" because if the manner of the trial court's review was wrong, we must reverse. *See First Union Securities*, 168 N.C. App. at 400, 607 S.E.2d at 676 ("Judicial review of an arbitration award is severely limited . . . ."). Given the trial court's order rests on two independent grounds of essence of the contract and manifest disregard, we can proceed on either basis. Given our courts and the Supreme Court of the United States have thus far declined to answer whether manifest disregard survived *Hall Street Associates*, *see In re Fifth Third Bank*, 216 N.C. App. at 487–88, 716 S.E.2d at 854–55 (explaining the U.S. Supreme Court has not decided the matter before declining to determine whether manifest disregard is still valid), we will address the trial court's "essence of the contract" grounds first and only proceed to "manifest disregard" if the trial court erred by vacating the arbitrator's award on the basis of the essence of the contract doctrine.

**A. Applicable Law and Standard of Review**

¶ 18          Before addressing the trial court's review of the arbitrator's award, we first examine the applicable law and our standard of review of the trial court's decision.

¶ 19          When reviewing orders based on federal statutes such as the FAA, we look to a mix of state and federal court decisions. As this Court explained in *In re Fifth Third Bank*:

> According to well-established law, when an "action is brought under [a] Federal statute . . . in so far as it has been construed by the Supreme Court of the United States, we are bound by that construction." *Dooley v. R.R.*, 163 N.C. 454, 457–58, 79 S.E. 970, 971 (1913). However, "North Carolina appellate courts are not bound, as to matters of federal law, by decisions of federal courts other than the United States Supreme Court." *Enoch v. Inman*, 164 N.C. App. 415, 420–21, 596 S.E.2d 361, 365 (2004) (citing *Security Mills v. Trust Co.*, 281 N.C. 525, 529, 189 S.E.2d 266, 269 (1972)). Even so, despite the fact that they are "'not binding on North Carolina's courts, the holdings and underlying rationale of decisions rendered by lower federal courts may be considered persuasive authority in interpreting a federal statute.'" *McCracken & Amick, Inc. v. Perdue*, 201 N.C. App. 480, 488 n. 4, 687 S.E.2d 690, 695 n. 4 (2009) (quoting *Security Mills*, 281 N.C. at 529, 189 S.E.2d at 269), *disc. review denied*, 364 N.C. 241, 698 S.E.2d 400 (2010).

216 N.C. App. at 488–89, 716 S.E.2d at 855. Of course, we are also bound by decisions of our Supreme Court and by prior panels of this Court. *See, e.g., In re O.D.S.*, 247 N.C. App. 711, 721–22, 786 S.E.2d 410, 417 (2016) ("One panel of this Court cannot overrule a prior panel of this Court, or our Supreme Court." (citing *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989))).

¶ 20        Turning to "the standard of review of the trial court's vacatur of [an] arbitration award," it "is the same as for any other order in that we accept findings of fact that are not clearly erroneous and review conclusions of law *de novo*." *Carpenter*, 139 N.C. App. at 750, 534 S.E.2d at 645 (quotations and citation omitted).

### B. Trial Court's Review

¶ 21        Plaintiff first argues "the trial court impermissibly conducted a *de novo* review of" the arbitration award.  (Capitalization altered.)  Specifically, Plaintiff argues "[t]he transcript of the proceedings demonstrates" the trial judge "simply misunderstood the role of the court in connection with a request for the confirmation of an arbitration award" in that she "impermissibly substituted her judgment for that of" the arbitrator.

¶ 22        We reject Plaintiff's argument because it improperly focuses on the hearing rather than the written order.  "The trial judge's comments during the hearing as to . . . law are not controlling; the written court order as entered is controlling." *Fayetteville Publishing Co. v. Advanced Internet Technologies, Inc.*, 192 N.C. App. 419, 425, 665 S.E.2d 518, 522 (2008) (citing *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 215, 580 S.E.2d 732, 737 (2003), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004)).  Thus, all the trial judge's comments to which Plaintiff points here are not controlling; we only review the entered written order vacating the arbitrator's award.

¶ 23        Turning to the written order, Plaintiff does not demonstrate the trial court impermissibly conducted a *de novo* review.  As laid out above, "[u]nder the FAA, arbitration awards may be vacated only in limited situations." *Carpenter*, 139 N.C. App. at 750, 534 S.E.2d at 645.  The trial court's written order lists two alternative

bases for vacating the arbitration award: (1) "the award fails to draw its essence from the Loan Agreement" and (2) the arbitrator "demonstrated a manifest disregard of the law." We have already explained essence of the contract is an acceptable grounds for review as the Supreme Court of the United States has determined it falls within § 10(a)(4) of the FAA. *See Oxford Health Plans*, 569 U.S. at 569–70, 186 L. Ed. 2d at 119–20 (laying out the essence of the contract doctrine as part of determining "the arbitrator did not exceed his powers" under § 10(a)(4)). Thus, on at least one of the alternative grounds, the trial court's review was proper.

¶ 24     If at least one of the grounds for review was proper and with the uncertainty around the continued existence of manifest disregard, we would not need to address the propriety of the trial court's review on that ground. First, we can consider whether to uphold the trial court's order based on the essence of the contract doctrine. Second, even if we cannot uphold the order based on essence of the contract grounds, we could determine the order needs to be reversed because, presuming *arguendo* manifest disregard is still a valid ground, Defendant failed to show a manifest disregard below. *See In re Fifth Third Bank*, 216 N.C. App. at 488, 716 S.E.2d at 855 (concluding party failed to demonstrate manifest disregard of the law such that the court did not need to "determine the extent, if any, to which 'manifest disregard of the law' remains a valid non-statutory basis for vacating an arbitration award"). Thus, only if we first determine the trial court improperly applied essence of the

contract but correctly applied manifest disregard do we need to determine whether the trial court properly reviewed for manifest disregard. Only in that scenario would the existence of manifest disregard be dispositive such that we have to address the question the Supreme Court of the United States and this Court have avoided. *In re Fifth Third Bank*, 216 N.C. App. at 487–88, 716 S.E.2d at 854–55. We first evaluate the essence of the contract ground.

## C. Essence of the Contract

¶ 25    Plaintiff argues the trial court's *vacatur* of the arbitration award based on the essence of the contract doctrine "is erroneous in two regards." First, Plaintiff argues the doctrine does not apply because she did "not assert[] any breach of contract claims." Second, she contends even if it applies, the award "is, at a minimum, rationally inferable from material terms contained in the parties' loan agreement."

¶ 26    As noted, essence of the contract is a doctrine that fits with the FAA provision allowing for *vacatur* where the arbitrators "exceeded their powers." 9 U.S.C. § 10(a)(4); *see Oxford Health Plans*, 569 U.S. at 569–70, 186 L. Ed. 2d at 119–20 (explaining a court can overturn the arbitrator's determination under § 10(a)(4) only when the arbitrator exceeded his contractually delegated authority by issuing an award based on his own policy determinations rather than "drawing its essence from the contract" (quoting *Eastern Associated Coal*, 531 U.S. at 62, 148 L. Ed. 2d 354)). The bar for an arbitrator's award drawing its essence from a contract is low; the

arbitrator need only be "'arguably construing or applying the contract.'" *See Eastern Associated Coal*, 531 U.S. at 62, 148 L. Ed. 2d at 360 (explaining as long as the arbitrator is doing that, "the fact that 'a court is convinced he committed serious error does not suffice to overturn his decisions.'" (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 98 L. Ed. 2d 286 (1987)); *see also Oxford Health Plans*, 569 U.S. at 573, 186 L. Ed. 2d at 122 ("Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all.").

¶ 27        As an example of this low bar, in *Oxford Health Plans*, when the arbitrator explained "his . . . decision was 'concerned solely with the parties' intent as evidenced by the words'" of the relevant contract clause and performed a "textual analysis," the Supreme Court of the United States found the arbitrator was construing the contract "focusing, per usual, on its language." 569 U.S. at 570–71, 186 L. Ed. 2d at 120–21. As a result, "to overturn his decision, [the Court] would have to rely on a finding that he misapprehended the parties' intent," but "§ 10(a)(4) bars that course: It permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly." *Id.*, 569 U.S. at 571–72, 186 L. Ed. 2d at 121.

¶ 28        The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has also expanded upon the essence of the contract doctrine in a persuasive manner.

It has clarified *vacatur* is appropriate for "an award that contravenes the plain and unambiguous terms of the" contract. *See Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 237 (4th Cir. 2006) (citing *United Paperworkers Int'l Union*, 484 U.S. at 38, 98 L. Ed. 2d 286) (explaining the "deferential" standard of review of arbitration awards "does not require" affirming such an award). In other words, a court can vacate an arbitration award on the grounds it fails to draw its essence from the contract "when an arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong." *Three S Delaware*, 492 F.3d at 528 (citing *Patten*, 441 F.3d at 235).

¶ 29    For example, in *Patten*, the Fourth Circuit considered an issue of the timeliness of the arbitration demand when the governing agreement "contained no explicit time limitation." 441 F.3d at 236. The Fourth Circuit found the arbitrator's award "failed to draw its essence from the governing arbitration agreement" because the arbitrator's imposition of a one-year limitations period "contradicted the plain and unambiguous terms" of the agreement. *Id.* at 236–37. While that example covers interpreting the scope of arbitration, the essence of the contract doctrine extends to other provisions as well. *E.g. MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 861–62 (4th Cir. 2010) (applying doctrine to aspects of contract related to "damages claim").

¶ 30        Here, the trial court vacated on essence of the contract grounds by explaining: "Additionally, the award fails to draw its essence from the Loan Agreement as the application of North Carolina law is inconsistent with the plain language of the Loan Agreement stating that Virginia law applies." In a section on "Governing Law, Assignment and Amendment," the Loan Agreement states: "This Loan Agreement shall be governed by the laws of the State of Virginia, except that the Waiver of Jury Trial and Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ('FAA')." Thus, a "plain and unambiguous term[]" of the contract provides Virginia law applies. *Patten*, 441 F.3d at 237.

¶ 31        The arbitration award recognized the arbitrator needed to decide whether to apply North Carolina law or Virginia law and explained the differences between the two:

> This case involves the extension of a loan to Claimant, a North Carolina resident, secured by an automobile titled in North Carolina, where the loan documents were signed in Respondent's office in Virginia. The loan carried an interest rate of nearly 150%, a rate that clearly violates the North Carolina Consumer Finance Act (the "CFA"), but that is arguably not illegal in Virginia. The question to be resolved is whether the language of the CFA applies to the transaction at issue here.

¶ 32        Despite this recognition, the arbitration award never considers or even mentions the Loan Agreement's Virginia choice of law provision. Instead, the arbitration award exclusively focuses on North Carolina's Consumer Finance Act in

its primary analysis. Thus, as in *Patten*, *vacatur* is appropriate here because the arbitration award "contradicted the plain and unambiguous terms" of the Loan Agreement. *Patten*, 441 F.3d at 236. The arbitrator here did not construe the governing contract "at all." *See Oxford Health Plans*, 569 U.S. at 573, 186 L. Ed. 2d at 122 ("Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all."). As such, the arbitration award does not draw its essence from the contract and therefore the arbitrator exceeded his power. *See id.*, 569 U.S. at 569–70, 186 L. Ed. 2d at 119–20 (explaining a court can overturn the arbitrator's determination under § 10(a)(4) when the award does not "draw[] its essence from the contract"). As a result, the trial court properly vacated the arbitrator's award.

¶ 33     Plaintiff first argues "the essence of the contract doctrine does not apply" because she did not assert "any breach of contract claims." (Capitalization altered.) First, this statement has no basis when looking at Fourth Circuit precedent we found persuasive above. *E.g. MCI Constructors*, 610 F.3d at 852, 861–62 (applying essence of the contract doctrine in case where complaint alleged claims including negligent misrepresentation and wrongful termination). *Patten* is one of the cases applying essence of the contract doctrine when the claims were not all contractual in nature, *see* 441 F.3d at 232, 236–37 (applying doctrine when underlying claims submitted to arbitration included age discrimination and wrongful termination), and Plaintiff cites

*Patten* a page later in her own briefing on essence of the contract doctrine.

¶ 34          Second, the only case law authority Plaintiff cites to support this proposition is a "Memorandum Opinion and Order" from the United States District Court for the Middle District of North Carolina ("Middle District") in *Strange et al. v. Select Management Resources, LLC et al.*, No. 1:19-cv-00321 (M.D.N.C. 2021). (Capitalization altered.) According to the copy of *Strange et al.* included in the addendum to Plaintiff's brief, when the Middle District was analyzing a party's argument the arbitrator refused to apply a choice of law provision, it was reviewing on the grounds of manifest disregard of the law, not essence of the contract. Thus, we reject Plaintiff's unsupported assertion that essence of the contract doctrine only applies to contract claims.

¶ 35          Plaintiff's other argument is that even if the essence of the contract doctrine does apply, the arbitrator's award is "at a minimum, rationally inferable from material terms contained in the parties' loan agreement." (Citing *Patten*, 441 F.3d at 235.) Plaintiff is correct that "[a]n arbitration award fails to draw its essence from the agreement only when the result is not 'rationally inferable from the contract.'" *Patten*, 441 F.3d at 235 (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir. 1998). But *Patten* itself defeats Plaintiff's argument. In *Patten*, when the arbitrator's award "disregarded the plain and unambiguous language of the" governing contract, the Fourth Circuit found "[t]he arbitrator's

ruling . . . resulted in an award that, in the language of *Apex Plumbing*, simply was 'not rationally inferable from the contract.'" *Id.* at 235–37 (quoting *Apex Plumbing*, 142 F.3d at 193 n.5). While Plaintiff points to a portion of the Loan Agreement relating to the interest rate and possession of title taking place at the NCDMV, that does not cure the arbitrator's failure to mention the choice of law provision when choice of law was the question he recognized he had to answer. Because the arbitrator's award "disregarded the plain and unambiguous language of the" Loan Agreement requiring application of Virginia law, the award "simply was 'not rationally inferable from the contract.'" *Id.* at 235–37. Therefore, the arbitrator's award failed to draw its essence from the Loan Agreement.

¶ 36        The issue before us is solely "Whether the trial court erred by granting Defendant-Appellee's Motion to Vacate [the] Arbitration Award." We conclude the trial court did not err in granting that motion because the arbitrator's lack of mention or consideration of the Loan Agreement's choice of law provision means his award does not draw its essence from the parties' contract containing that provision, and a failure to draw from the essence of the contract is a valid ground on which to vacate an arbitration award.

¶ 37        Therefore, after *de novo* review, we affirm the trial court's order vacating the arbitration award. Because we affirm, the trial court's *vacatur* order on essence of the contract grounds, we do not need to address its alternative ground of manifest

disregard.  Also, as we explained above, because we affirm the trial court's order

granting Defendant's motion to vacate the arbitration award, we also affirm its order

denying Plaintiff's motion to confirm the arbitration award.  *See* 9 U.S.C. § 9

(explaining a court "must grant" an order confirming an arbitration award "unless

the award is vacated . . .").

## III.    Trial Court's Dismissal

¶ 38        After vacating the arbitration award, the trial court also dismissed the case

saying, "Plaintiff's claims against Defendant are hereby dismissed with prejudice."

The trial court's use of the word "hereby" indicates its dismissal of Plaintiff's claims

turns on its decision to vacate the arbitration award.  While the trial court properly

vacated the arbitration award as we have explained above, the FAA does not allow it

to then dismiss the action.  The FAA explains, "If an award is vacated . . .  the court

may, in its discretion, direct a rehearing by the arbitrators."[4]  9 U.S.C. § 10(b).  The

United States Supreme Court has explained if a court, in its discretion, chooses not

to "'direct a rehearing by the arbitrators'" then the court "must . . . decide the question

that was originally referred to the" arbitrators.  *See Stolt-Nielsen*, 559 U.S. at 677,

---

[4] The omitted portion of § 10(b) restricts the trial court's ability to direct a rehearing to situations where "the time within which the agreement required the award to be made has not expired."  9 U.S.C. §10(b).  That restriction does not apply here because the arbitration provisions of the Loan Agreement do not include a "time within which" the award has to be made.

176 L. Ed. 2d at 619 (quoting 9 U.S.C. § 10(b)) (so explaining in terms of its own review after vacating an arbitration panel's award). Therefore, a court cannot dismiss a case following *vacatur* of an arbitration award under the FAA. As a result, we remand to the trial court to, in its discretion, choose between "'direct[ing] a rehearing by the arbitrator[]'" or "decid[ing] the question that was originally referred" to the arbitrator. *Stolt-Nielsen*, 559 U.S. at 677, 176 L. Ed. 2d at 619 (quoting 9 U.S.C. § 10(b)).

## IV. Conclusion

We hold the trial court properly reviewed to determine whether the award drew its essence from the Loan Agreement and did not err in vacating the arbitrator's award and, based on our *de novo* review, properly concluded the award did not. Because we affirm based on the essence of the contract doctrine, we do not reach the trial court's alternative ground for *vacatur,* i.e. manifest disregard. Given we affirm the trial court's order vacating the arbitrator's award, we also affirm its order denying Plaintiff's motion to confirm the award. The trial court, however, could not dismiss the case in reliance on its *vacatur* of the arbitration award. We remand for the trial court, in its discretion, to either direct a rehearing by the arbitrator or decide for itself the issues originally sent to the arbitrator.

AFFIRMED AND REMANDED.

Judges TYSON and GORE concur.